UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ARLENE D. GUMM, ET AL,

    Plaintiffs,

v.

ALEX A. MOLINAROLI, ET AL,

    Defendants.

Case No. 16-CV-1093-PP

---

**DECISION AND ORDER GRANTING THE MOTION OF THE JCI SHAREHOLDERS' GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL (DKT. NO. 18); DENYING MOTION OF JOHN AND VIVIAN FIFRICK FOR APPOINTMENT AS PLAINTIFF AND APPROVAL OF LEAD COUNSEL (DKT. NO. 21); AND APPOINTING LEAD PLAINTIFF, LEAD COUNSEL AND LIAISON COUNSEL**

---

JCI Shareholders Group and John and Vivian Fifrick have filed competing motions seeking appointment as lead plaintiffs and approval of lead counsel. Dkt. Nos. 18 (JCI), 21 (Fifrick). The motions are fully briefed. The court finds that the JCI Shareholders Group is the most adequate lead plaintiff, and approves Lockridge Grindal Nauen, P.L.L.P. as lead counsel and Wagner Law Group, S.C. as liaison counsel.

**BACKGROUND**

Johnson Controls, Inc. ("JCI") and Tyco International ("Tyco") entered into a plan of merger on January 24, 2016. Dkt. No. 1 at ¶1. In its January 25, 2016 announcement, JCI stated that the merger would be tax-free to Tyco shareholders and taxable to JCI shareholders. Id. at ¶6. On August 16, 2016,

1

plaintiffs Arlene Gumm, Paul Pontier, Cynthia Pontier, Danny High, and Michael Holtzhauer filed a complaint on behalf of themselves and all other similarly situated stockholders of JCI against certain senior executive officers, all members of the Board of Directors of JCI, JCI, Jagara Merger Sub LLC and Tyco. Id. at 4. The complaint asserts that the merger[1] specifically was structured to allow JCI to gain tax benefits by reincorporating in Ireland—Tyco's legal domicile (referred to as an "inversion" or "tax inversion").[2] Id. at ¶¶3, 5. To gain these tax benefits, JCI allegedly diluted the stock to a point that any tax liability for reincorporating in Ireland shifted to the shareholders. Id. at ¶¶11,12. Accordingly, the plaintiffs alleged that the merger hurts two classes of shareholders: (1) public shareholders and (2) shareholders with potential exposure to capital gain taxation. Id. at ¶1.

Also on August 16, 2016, in accordance with the statute governing the procedure for private securities class actions (15 U.S.C. §78u-4(a)(3)(A)), the plaintiffs published notice of the action to investors and informed potential plaintiffs of the October 17, 2016 deadline to file lead plaintiff motions. Dkt. No. 20-3. On October 17, 2016, Peter Smykla, Cathreen Clark, Cynthia Pontier, Henry Nisiewicz, and Brian Ellison (collectively "the Group") and John and Vivian Fifrick filed competing motions now before the court, each seeking

---

[1] In the complaint, the plaintiffs refer to the merger as "proposed." It appears that the merger was completed on September 2, 2016. See http://www.johnsoncontrols.com/merger
[2] According to the plaintiffs, an "inversion" or a "tax inversion" is a process by which a U.S. domiciled corporation becomes a subsidiary of a foreign parent corporation and the shareholders of the U.S. corporation become shareholders of the new foreign parent in an exchange of their U.S. corporation's stock for stock in the new foreign parent. Dkt. No. 1 at ¶9. This process reduces the U.S. corporation's federal and state corporate income tax. Dkt. No. 1 at ¶9.

2

appointment as lead plaintiffs and each seeking approval of different lead counsel. Dkt. Nos. 18, 21. The Group is composed of "five knowledgeable, successful business executives, entrepreneurs, and professionals…who, in addition to being substantial investors, will exert their influence in the litigation and will effectively oversee counsel." Dkt. No. 30 at 4. Collectively, the Group holds 347,116 shares of JCI stock. Dkt. No. 20-2. John and Vivian Fifrick are a married couple who own 203,424 shares of JCI stock. Dkt. No. 22-2; Dkt. No. 29 at 5.

For the reasons explained below, the court finds that the Group is the most adequate lead plaintiff and approves the Group's selection of Lockridge Grindal Nauen, P.L.L.P. as lead counsel and Wagner Law Group, S.C. as liaison counsel.

**DISCUSSION**

In an attempt to reform abusive securities class action litigation practices, Congress passed the Private Securities Litigation Reform Act ("PSLRA") in 1995. In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998). To prevent lawyer-driven litigation, the PSLRA directs courts to determine the most adequate lead plaintiff or plaintiffs. 15 U.S.C. §78u-4(a)(3)(B)(i); Asher v. Baxter Intern. Inc., 505 F.3d 736, 737 (7th Cir. 2007) ("Lead plaintiffs are supposed to counteract the dominance of lawyers over class-action suits; the district judge should select a representative with a financial stake large enough to make monitoring of counsel worthwhile, and with the time and skills needed to make monitoring productive.") Consequently,

3

the filing of a securities class action complaint triggers a cascade of deadlines under the PSLRA: (1) the plaintiffs have twenty days to publish a notice of the action informing class members of the deadline to file a motion to serve as lead plaintiff (§78u-4(a)(3)(A)(i)); (2) potential class members then have sixty days from the date of the notice to file lead plaintiff motions with the court (§78u-4(a)(3)(A)(i)(II)); and finally (3) within ninety days of the date of the notice, the court must consider any motions filed and appoint a lead plaintiff (§78u-4(a)(3)(B)(i)).

When considering motions to serve as lead plaintiff, the court shall adopt a presumption that the most adequate plaintiff is the "person or group of persons" that (1) made a motion or filed the complaint, (2) has the largest financial interest in the relief sought by the class, and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. §78u-4(a)(3)(B)(iii). The presumption is rebuttable, but in order to rebut it, a member of the purported plaintiff class must provide proof that the presumptively most adequate plaintiff either will not fairly and adequately protect the interests of the class, or is subject to "unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

In this case, the presumption arises in favor of the Group for the following reasons: (1) it filed a timely motion; (2) it has the largest financial interest; and (3) it satisfies the requirements of Rule 23. The Fifricks have not submitted the kind of proof required to rebut the presumption.

4

### A. Both Motions Were Timely Filed.

The PSLRA requires that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. §78u-4(a)(3)(A)(i)(II). The plaintiffs published the notice on August 16, 2016. Dkt. No. 20-3. Members of the purported class had until October 17, 2016 to file a motion to serve as lead plaintiff. Id. Both the Group and the Fifricks filed their motion by this deadline.[3] Dkt. Nos. 18, 21.

### B. The Group Has the Largest Financial Interest.

In order for the rebuttable presumption to arise in favor of a person or group of persons, the court must determine which movant has the largest financial interest. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). The PSLRA does not provide a formula for determining which plaintiff or plaintiffs has the largest financial interest. Id. Many courts apply a four-factor test. See In re: Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001)("we agree with the many district courts that have held that courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and

---

[3] While the Fifricks filed their motion on October 17, 2016, their supporting memorandum of law did not appear on the court's docket until October 18, 2016. Dkt. No. 23. For that reason, the Group argues that the Fifricks' memorandum in support was not timely. Dkt. No. 27 at 6. The court ultimately finds that the Group is the most adequate plaintiff for other reasons. The court notes several things, however. First the PSLRA does not require a memorandum of law in support of a motion for appointment as lead plaintiff. See 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Second, while the Eastern District of Wisconsin's Civil L. R. 7 requires a moving party to file a supporting memorandum or certificate stating no memorandum will be filed, the rules are enforced primarily upon the court's own initiative, per General L. R. 1. Finally, the Fifricks assert that their memorandum would have been filed on October 17 if not for an ECF error. Dkt. No. 32 at 11. Thus, the court does not find it relevant that the Fifricks' supporting memorandum did not hit the docket until October 18, 2016.

5

(3) the approximate losses suffered by the plaintiffs"). In this case, it appears that the parties agree that this is a unique case, and that the number of shares held by each party is a key factor.[4] Dkt. No. 19 at 5; Dkt. No. 29 at 5. Consequently, the court will measure the movants' financial interest by reviewing the respective number of shares. See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Investment Corp., 256 F.R.D. 620, 623-24 (E.D. Wis. 2009) ("[B]y not specifying a method for determining the largest financial interest and stating instead that the determination is the court's, the PSLRA appears to discourage any [finely-calibrated] inquiry and prefer that the court make the determination based on whatever factors seem most appropriate under the facts of the case before it.").

The Group has the largest financial interest in the relief sought. The Group collectively owns 347,116 shares of JCI stock. Dkt. No. 27 at 1, 4. The Fifricks own 203,424 shares. Dkt. No. 29 at 5. To counter the appearance that the Group has the largest financial interest, the Fifricks raise objections to the Group's share count; they argue that (1) the court should not include the Clark and Nisiewicz shares because those two individuals submitted certifications with electronic signatures; (2) the court should reduce Cynthia Pontier's share count because it includes shares belonging to family members; and (3) the court should not aggregate all the Group's shares, because the Group was "cobbled together by its counsel" and because there is no evidence of "pre-

---

[4] The Group also asks the court to consider the potential capital gain tax estimates. Dkt. No. 30 at 10. The court declines to determine whether this is an appropriate consideration in the financial interest analysis. All parties agree that the court should take the number of shares into account, and the Group has the largest share count.

6

litigation relationship or cohesion." Id. at 4. The court does not find these arguments persuasive, and finds that the presumption arises that the Group has the larger financial interest. Dkt. No. 32 at 3, 6.

### 1. Clark and Nisiewicz Shares

The Fifricks ask the court not to include the shares belonging to Clark and Nisiewicz because their certifications contain electronic signatures. Dkt. No. 32 at 7. The PSLRA requires "personally signed" certifications. 15 U.S.C. §78u-4(a)(2)(A). This phrase arguably could mean that the statute requires wet signatures rather than electronic signatures. The Group, however, directs the court to ¶II(C)2 of the Eastern District of Wisconsin's ECF manual. Dkt. No. 30 at 8. This section allows an attorney to obtain a signature from his clients on the original document, and then to electronically file a version of the document bearing an electronic signature as long as the attorney maintains the original document and can provide it for review upon request of the judge.[5] Counsel for the Group represents that he followed this procedure, Dkt. No. 30 at 8; the court accepts that assertion as true, given that attorneys of record are officers of the court. The court will include Clark and Nisiewicz shares in its financial interest analysis.

### 2. Pontier Shares

The Fifricks argue that Cynthia Pontier does not own the 57,840[6] shares she claims to represent, and that she is not authorized to act on behalf of the people whose shares she claims to represent. Dkt. No. 29 at 5 n.3. Cynthia

---

[5] http://www.wied.uscourts.gov/e-filing/ecf-policies-and-procedures#Signatures.
[6] Dkt. No. 20-2.

7

Pontier's affidavit attests that she inherited 6,000 shares from her father, and that she sold 1,700 of those shares, which leaves her with 4,300 shares, Dkt. No. 16-34 at 3 – 53,540 shares less that she indicates she represents.[7]

The Group responds that Pontier does not claim to own all of the shares she represents, she has her mother's power of attorney, and on this basis represents her mother's shares as well as her own. Dkt. No. 30 at 13-14. Pontier's brother Paul's affidavit indicates that their mother owns 51,000 shares. Dkt. No. 35 at 3. Adding these to Cynthia Pontier's shares yields a total of 55,300 shares which Cynthia Pontier appears to be authorized to represent, not counting those of her sister Patricia (who is ill), and her brother Paul (who is a named plaintiff, although he has not sought to be named as a lead plaintiff). On this basis, the court does not agree that Cynthia Pontier's shares are inflated.

Even if the court excluded the shares Pontier claims to represent (at least, all but 4,300, which she herself owns), the Group's remaining share count still would be larger. The remaining share count would total 293,579, and would include Smykla at 96,028 shares, Clark at 91,500 shares, Nisiewicz at 53,000 shares, Ellison at 48,748 shares and Pontier at 4,300 shares. Dkt. No. 20-2.

### 3. Aggregation

The Fifricks also ask the court to refuse to aggregate the Group's shares (the Smykla, Clark, Nisiewicz and Ellison shares) because the Group's counsel

---

[7] The Fifricks indicate that Cynthia Pontier owns 7,257 shares, rather than the 4,300 referenced by the court. Dkt. No. 32 at 13. Either way, including only her shares and not those of any other Pontier family member still makes the Group's financial interest the greater one.

"cobbled together" a group of otherwise unrelated investors for the purpose of creating a lead plaintiff. Dkt. No. 32 at 3. The plain language of §78u-4(a)(3)(B) allows the court to appoint multiple persons as lead plaintiff, and the presumption arises "that the most adequate plaintiff in any private action… is the person or *group of persons* that… has the largest financial interest in the relief sought by the class." (emphasis added). The statute does not contain a requirement of a pre-litigation relationship. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); see also City of Sterling Heights General Employees' Retirement System, et al., v. Hospira, Inc., 2012 WL 1339678, *6 (N.D. Ill. April 18, 2012) (holding that the plain language of the PSLRA does not preclude aggregation of financial interests). The Fifricks also assert – without any proof – that the Group's creation is "lawyer-driven," and that the Group really contains more than the five presumptive lead plaintiffs it names. Without proof, these assertions are just that – assertions.

The court concludes that the Group has the largest financial interest in the relief sought by the complaint.

### C. The Group Satisfies the Requirements of Federal Rule of Civil Procedure 23 for the Purpose of Seeking Appointment as Lead Plaintiff.

For the most adequate plaintiff presumption to arise, the plaintiff(s) must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Although Federal Rule of Civil Procedure 23 requires numerosity, commonality, typicality and adequacy, in the context of motions for lead plaintiff inquiries, courts considering these factors for the

9

purpose of appointing a lead plaintiff do not engage in a "wide-ranging analysis under Rule 23," and generally focus on only typicality and adequacy.[8] <u>Lax v. First Merchants Acceptance Corp.</u>, 1997 WL 461036, *6 (N.D. Ill. Aug. 11, 1997)(quoting <u>North Carolina Bd. of Examiners v. North Carolina State Bd. of Educ.</u>, 468 S.E. 2d 826 (N.C. App. 1996). Furthermore, the movants only need to make a preliminary showing that the rules have been satisfied. <u>Martingano v. American Int'l Grp., Inc.</u>, Case Nos. 06cv1625, 06cv2014, 2006 WL 1912724 at *4 (E.D.N.Y. 2006).

Typicality is met when the claims arise from the same events or practice or course of conduct that gives rise to the claims of the other class members. <u>Lax</u>, 1997 WL 461036 at *6 (quoting <u>DeLaFuente v. Stokely-VanCamp, Inc.</u>, 713 F.2d 225, 232 (7th Cir. 1983)[9]). The Group's claims arise from the alleged ramifications of the merger, as do the claims of the rest of the purported class. The court finds that the Group has met the typicality requirement for the purposes of its motion to be appointed lead plaintiff.

Adequateness is satisfied when the presumptive lead plaintiff does not have claims in conflict with other class members, has competent counsel and has sufficient interest in the outcome of the case to ensure vigorous advocacy. <u>Lax</u>, 1997 WL 461036 at *6 (N.D. Ill. Aug. 11, 1997) (citations omitted). As indicated by the court's finding on the financial interest requirement, the

---

[8] The fact that the court makes preliminary class certification findings of typicality and adequacy for the purposes of appointing a lead plaintiff does not preclude any party from contesting those, or any other, class certification requirements for the purpose of ultimate class certification in the future. <u>Martingano v. American Intern. Group, Inc.</u>, 2006 WL 1912724, *4 (E.D.N.Y. July 11, 2006).

[9] Overruled on other grounds by <u>Green v. Mansour</u>, 474 U.S. 64 (1985).

10

Group has a substantial financial stake in the litigation, which provides it with the motivation to advocate vigorously on behalf of the class. The court has no information before it to indicate that proposed lead counsel is not competent; indeed, the pleadings thus far argue to the contrary. There is also no evidence that the Group has any conflicts with other class members. The Fifricks have provided no evidence, proof or argument to the contrary.

The court finds that the most adequate plaintiff presumption arises in favor of the Group.

> **D. The Fifricks Have Not Provided Evidence Sufficient to Rebut the Presumption in Favor of the Group.**

"The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(a)(a) will not fairly and adequately protect the interests of the class; or (b)(b) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); In re Vonage Initial Pub. Offering (IPO) Sec. Litig., No. CIV A 07-177 FLW, 2007 WL 2683636, at *7 (D.N.J. Sept. 7, 2007) ("Once the presumption has been established, the question is not whether another applicant might do a better job of protecting the interests of the class than the presumptive lead plaintiff. Rather, the question is whether anyone can prove the presumptive lead plaintiff will not do a "fair [ ] and adequate [ ]" job.") (citing In re Cendant, 264 F.3d at 268.)

The Fifricks argue that the Group will not fairly and adequately protect the interests of the class because they are a group of unrelated plaintiffs

11

"cobbled together" to meet the financial interest requirement.[10] Dkt. No. 32 at 3. As stated above, the PSLRA has no provision preventing multiple plaintiffs from acting as lead plaintiff, in fact, the statute contemplates it in several spots. Still, some courts have noted that "[a]llowing lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would 'allow and encourage lawyers to direct the litigation.'" Maiden v. Merge Technologies, Inc., 2006 WL 3404777, *3 (E.D. Wis. Nov. 21, 2006) (citing In re: Pfizer Inc. Sec. Litig., 233 F.R.D. 334, 337 (S.D.N.Y. 2005)). And "[a] single lead plaintiff speaking on behalf of the class reduces potential conflicts in deciding litigation and settlement strategy." Zucker v. Zoran Corp., 2006 WL 3591156, *2 (N.D. Cal. Dec. 11, 2006).

In this case, the court finds that the Group will adequately and fairly protect the interests of the class. According to the reply brief in support of the Group's motion, the Group had a conference call on November 3, 2016 to "adopt and implement a structure for consulting on a regular basis with their counsel and overseeing this litigation." Dkt. No. 30 at 5. The Group will meet at least quarterly for the next twelve months, and has designed a plan of communication and a fair method of achieving consensus. Id. at 6. This proposed methodology demonstrates that the Group intends to work with and on behalf of all plaintiffs, and that it is making efforts to reduce conflict. As the Fifricks admit, other courts have approved group lead plaintiffs under similar circumstances. Dkt. No. 32 at 4; In re Versata, Inc. Secs. Litig., 2001 U.S. Dist.

---

[10] The Fifricks have not argued that there are any "unique defenses" that render the Group incapable of adequately representing the class.

12

LEXIS 24270, *24 (N.D. Cal. Aug. 17, 2001). The Fifricks have not presented evidence, compelling or otherwise, that the Group will not fairly and adequately represent the class, and the presumption entitles the Group to act as lead plaintiff. See In re Cavanaugh, 306 F.3d 726, 732 (9th Cir. 2002)("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status.").

The court will not conduct a detailed analysis of the Fifricks' motion for appointment as lead counsel, because the Group is entitled to the presumption and the Fifricks have not rebutted that presumption.

### E. The Court Approves the Group's Selection of Lead and Liaison Counsel.

The PSLRA allows the lead plaintiff to select and retain class counsel, subject to court approval. 15 U.S.C. §78u-4(a)(3)(B)(v). The decision to approve selected counsel lies within the court's discretion. See Plumbers & Pipefitters Local 562 Pension Fund, 256 F.R.D. at 623-24 (citations omitted). The Group has selected Lockridge Grindal Nauen, P.L.L.P. as lead counsel and Wagner Law Group, S.C. as local liaison counsel. Lockridge Grindal Nauen, P.L.L.P. has extensive experience with securities class actions and experience with a similar type of inversion case. Dkt. No. 30 at 12-13. It appears to have the expertise, resources, and experience needed to adequately represent the plaintiffs in this case. Id. Proposed liaison counsel is a local law firm with experience practicing before courts in Wisconsin, and thus, well situated to act as liaison counsel. Dkt. No. 19 at 9. The court will approve the Group's selection of lead and liaison counsel.

13

**CONCLUSION**

The court **GRANTS** the motion of the JCI Shareholders' Group for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel. Dkt. No. 18.

The court **DENIES** the motion of John and Vivian Fifrick for Appointment as Plaintiff and Approval of Lead Counsel. Dkt. No. 21.

The court **ORDERS** that Peter J. Smykla, Cathreen W. Clark, Cynthia Pontier, Henry J. Nisiewicz, and Brian L. Ellison ("JCI Shareholders' Group") are **APPOINTED** as lead plaintiffs in this case.

The court **ORDERS** that Lockridge Grindal Nauen P.L.L.P. is **APPOINTED** as lead counsel, and that Wagner Law Group, S.C. is **APPOINTED** as liaison counsel.

Dated in Milwaukee, this 14th day of November, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge