# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

---

ARLENE D. GUMM, *et al.*, on behalf of
themselves and all other similarly situated former
stockholders of JOHNSON CONTROLS, INC.,

        Plaintiffs,

-vs-                                Case No. 16-CV-01093

ALEX A. MOLINAROLI, *et al.*,

        Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

---

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................5

    A.     Background of the merger ...................................................................... 5

    B.     Structure of the merger, terms of the merger agreement, and key
           disclosures.................................................................................................. 6

           1.     JCI shareholders would own 56 percent of the combined company .......... 6

           2.     The merger would be taxable to JCI shareholders.................................... 7

    C.     The fairness opinions, unanimous board approval, and overwhelming
           shareholder approval of the merger ...................................................... 7

    D.     Proceedings to date ................................................................................ 8

    E.     The Amended Complaint ...................................................................... 10

ARGUMENT ......................................................................................................................10

I.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER
       SECTION 14(A) AND RULE 14A–9 AND UNDER SECTION 20(A). ........................11

    A.     The Amended Complaint fails to plead in conformity with the Reform
           Act............................................................................................................ 12

    B.     The Amended Complaint fails to plead a material misrepresentation or
           omission. ................................................................................................ 16

           1.     The Proxy disclosed the structure of the transaction and that it
                   would be taxable. .................................................................................. 17

           2.     The Proxy disclosed that JCI shareholders would own 56 percent
                   of the combined company. .................................................................... 18

           3.     All other material facts were disclosed. .................................................. 19

    C.     The Amended Complaint fails to plead loss causation. ........................ 23

    D.     The Amended Complaint fails to plead a Section 14(a) claim as to the
           officer defendants.................................................................................. 25

    E.     The Amended Complaint fails to state a plausible control-person claim
           under Section 20(a). .............................................................................. 26

II.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE
        TAXPAYER BILL OF RIGHTS II. .................................................................27

III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH
        OF FIDUCIARY DUTY. ..............................................................................27

        A.    The Amended Complaint fails to plead a sufficient basis to overcome
              Wisconsin's strong business judgment rule. ........................................ 29

        B.    The Amended Complaint fails to sufficiently plead an exception to Wis.
              Stat. § 180.0828(1). ........................................................................... 30

              1.    Plaintiffs do not sufficiently plead material conflict of interest
                    (§ 180.0828(1)(a)) ..................................................................... 30

              2.    Plaintiffs do not sufficiently plead improper personal profit
                    (§ 180.0828(1)(b)). .................................................................... 33

              3.    Plaintiffs do not sufficiently plead willful misconduct
                    (§ 180.0828(1)(c)) ..................................................................... 34

        C.    The Amended Complaint fails to plead a breach of fiduciary duty as to the
              officer defendants. .............................................................................. 34

IV.     PLAINTIFFS' OTHER STATE-LAW CLAIMS FAIL TO STATE A CLAIM. .............37

        A.    The Amended Complaint fails to state a claim for other state-law tort
              claims. ................................................................................................ 37

        B.    The Amended Complaint fails to state a claim for violation of Wis. Stat.
              § 180.0601 .......................................................................................... 38

        C.    The Amended Complaint fails to state a contract or contract-related claim........ 39

CONCLUSION ...................................................................................................40

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Alam* v. *Miller Brewing Co.*,
   709 F.3d 662 (7th Cir. 2013) .................................................. 10

*Arnold* v. *Soc'y for Sav. Bancorp, Inc.*,
   678 A.2d 533 (Del. 1996) ...................................................... 37

*Bank of America, N.A.* v. *Knight*,
   725 F.3d 815 (7th Cir. 2013) .................................................. 35

*Beck* v. *Dobrowski*,
   2007 WL 3407132 (N.D. Ill. Nov. 14, 2007) .................................. 15

*Beck* v. *Dobrowski*,
   559 F.3d 680 (7th Cir. 2009) ............................................. *passim*

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ............................................................ 10

*Boca Raton Firefighters & Police Pension Fund* v. *Bahash*,
   506 F. App'x 32 (2d Cir. 2012) ............................................... 14

*Bogie* v. *Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ............................................ 5 n.1

*Casper* v. *American Int'l S. Ins. Co.*,
   2011 WI 81, 336 Wis. 2d 267, 800 N.W.2d 880 ............................. 35

*Cavoto* v. *Hayes*,
   2010 WL 2679973 (N.D. Ill. July 1, 2010) .................................. 27

*Conlee* v. *WMS Industries, Inc.*,
   2012 WL 3042498 (N.D. Ill. July 25, 2012) ................................. 13

*Constr. Workers Pension Fund-Lake Cty. & Vicinity* v. *Navistar Int'l Corp.*,
   2014 WL 3610877 (N.D. Ill. July 22, 2014) ......................... 13, 14, 15

*Copperweld Corp.* v. *Independence Tube Corp.*,
   467 U.S. 752 (1984) ............................................................ 38

*Coronet Ins. Co.* v. *Seyfarth*,
   665 F. Supp. 661 (N.D. Ill. 1987) ............................................ 22

*Dasho* v. *Susquehanna Corp.*,
   461 F.2d 11 (7th Cir. 1972) ................................................... 24

*Data Key Partners* v. *Permira Advisers LLC*,
   2014 WI 86, 356 Wis. 2d 665, 849 N.W.2d 693 ......................... *passim*

*Desaigoudar* v. *Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) ............................................ 18 n.7

*Dixon* v. *ATI Ladish LLC*,
667 F.3d 891 (7th Cir. 2012) ............................................................................ 34

*Dixon* v. *Ladish Co.*,
785 F. Supp. 2d 746 (E.D. Wis. 2011) ......................................................... *passim*

*Einhorn* v. *Culea*,
2000 WI 65, 235 Wis. 2d 646, 612 N.W.2d 78 .................................................. 29

*Ford Motor Co.* v. *Lyons*,
137 Wis. 397, 405 N.W.2d 354 (Ct. App. 1987) ............................................... 38

*Frank* v. *Elgamal*,
2014 WL 957550 (Del. Ch. Mar. 10, 2014)....................................................... 37

*Fuchsgruber* v. *Custom Accessories, Inc.*,
2001 WI 81, 244 Wis. 2d 758, 628 N.W.2d 833 ............................................... 36

*Gandhi* v. *Sitara Capital Mgmt., LLC*,
689 F. Supp. 2d 1004 (N.D. Ill. 2010) ............................................................. 39

*Garden City Employees' Ret. Sys.* v. *Anixter Int'l, Inc.*,
2011 WL 1303387 (N.D. Ill. Mar. 31, 2011)............................................... 20 n.10

*Gilbert* v. *El Paso Co.*,
1988 WL 124325 (Del. Ch. Nov. 21, 1988) ...................................................... 28

*Goldfinger* v. *Journal Comm'ns Inc.*,
2015 WL 2189752 (E.D. Wis. May 8, 2015).................................................. *passim*

*Goldkrantz* v. *Griffin*,
1999 WL 191540 (S.D.N.Y. Apr. 6, 1999)......................................................... 24

*Grube* v. *Daun*,
563 N.W.2d 523 (Wis. 1997).............................................................................. 38

*Hegel* v. *Brunswick Corp.*,
2010 WL 4068490 (E.D. Wis. Oct. 15, 2010) ................................................... 40

*Himmel* v. *Bucyrus Int'l, Inc.*,
2014 WL 1406279 (E.D. Wis. Apr. 11, 2014)............................................... *passim*

*I. Meyer Pincus & Assocs., P.C.* v. *Oppenheimer & Co.*,
936 F.2d 759 (2d Cir. 1991)........................................................................ 12, 20

*In re Gen. Motors Class H Shareholders Litig.*,
734 A.2d 611 (Del. Ch. 1999)............................................................................ 31

*In re Harley-Davidson, Inc. Sec. Litig.*,
660 F. Supp. 2d 969 (E.D. Wis. 2009)............................................................... 14

*In re Keyspan Corp. Sec. Litig.*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) ......................................................... 20 n.11

*In re Lukens Inc. S'holders Litig.*,
757 A.2d 720 (Del. Ch. 1999)...................................................................... 17, 18

*In re Plains Expl. & Prod. Co. Stockholder Litig.*,
   2013 WL 1909124 (Del. Ch. May 9, 2013) ............................................................ 17

*In re Sauer-Danfoss Inc. S'holders Litig.*,
   65 A.3d 1116 (Del. Ch. 2011) ............................................................................ 17

*In re Synthes, Inc., S'holders Litig.*,
   50 A.3d 1022 (Del. Ch. 2012) ............................................................................ 32

*In re TIBCO Software Inc. Stockholders Litig.*,
   2015 WL 6155894 (Del. Ch. Oct. 20, 2015) ....................................................... 37

*In re Trados Inc. S'holders Litig.*,
   73 A.3d 17 (Del. Ch. 2013) ............................................................................... 32

*Klamberg* v. *Roth*,
   473 F. Supp. 544 (S.D.N.Y. 1979) .................................................................... 19

*Koppel* v. *4987 Corp.*,
   167 F.3d 125 (2d Cir. 1999) .............................................................................. 21

*Latesco, L.P.* v. *Wayport, Inc.*,
   2009 WL 2246793 (Del. Ch. July 24, 2009) ....................................................... 37

*Lenz* v. *Robert W. Baird & Co. Inc.*,
   2017 WL 639316 (E.D. Wis. Feb. 16, 2017) ...................................................... 27

*Mogell* v. *Calhoun*,
   2016 WL 3369233 (C.D. Ill. Mar. 15, 2016) ...................................................... 23

*Monroe Cty. Employees' Ret. Sys.* v. *Carlson*,
   2010 WL 2376890 (Del. Ch. June 7, 2010) ........................................................ 37

*N.Y. City Employees' Ret. Sys.* v. *Jobs*,
   593 F.3d 1018 (9th Cir. 2010) ...................................................................... 23, 25

*OFI Risk Arbitrages* v. *Cooper Tire & Rubber Co.*,
   2015 WL 4036179 (D. Del. July 1, 2015) ...................................................... 20 n.11

*Onderdonk* v. *Lamb*,
   79 Wis. 2d 241, 255 N.W.2d 507 (1977) ........................................................... 38

*Panter* v. *Marshall Field & Co.*,
   646 F.2d 271 (7th Cir. 1981) ............................................................................. 21

*Reget* v. *Paige*,
   2001 WI App. 73, 242 Wis. 2d 278, 626 N.W.2d 302 ................................... *passim*

*Santa Fe Indus., Inc.* v. *Green*,
   430 U.S. 462 (1977) ............................................................................. 3, 12, 19

*St. Francis Sav. & Loan Assoc.* v. *Hearthside Homes, Inc.*,
   221 N.W.2d 840 (Wis. 1974) ............................................................................ 39

*Starr* v. *!Hey, Inc.*,
   2003 WL 21212596 (N.D. Ill. May 23, 2003) ..................................................... 26

*Steven* v. *Hale–Haas Corp.*,
249 Wis. 205, 23 N.W.2d 620 (1946) .................................................................. 28, 36

*Swanson* v. *Am. Consumers Indus., Inc.*,
475 F.2d 516 (7th Cir. 1973) ................................................................................ 24

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .............................................................................................. 11

*TSC Indus., Inc.* v. *Northway, Inc.*,
426 U.S. 438 (1976) ...................................................................................... 3, 16, 18

*Tse* v. *Ventana Med. Sys., Inc.*,
297 F.3d 210 (3d Cir. 2002) .................................................................................. 3

*Tse* v. *Ventana Med. Sys., Inc.*,
123 F. Supp. 2d 213 (D. Del. 2000) ..................................................................... 24

*Vicom, Inc.* v. *Harbridge Merch. Servs., Inc.*,
20 F.3d 771 (7th Cir. 1994) .................................................................................. 11

*Washington Bancorporation* v. *Washington*,
1989 WL 180755 (D.D.C. Sept. 26, 1989) ........................................................... 22

*Wausau Med. Ctr., S.C.* v. *Asplund*,
182 Wis. 2d 274, 514 N.W.2d 34 (Ct. App. 1994) .......................................... 38, 40

*Williamson* v. *Curran*,
714 F.3d 432 (7th Cir. 2013) ......................................................................... 5 n.1

*Yamamoto* v. *Omiya*,
564 F.2d 1319 (9th Cir. 1977) .............................................................................. 25

*Zell* v. *C.I.R.*,
763 F.2d 1139 (10th Cir. 1985) ............................................................................ 27

**Statutes, Rules, and Regulations**

15 U.S.C. § 77bb(a)(1) ......................................................................................... 23

15 U.S.C. § 78n(a) ................................................................................................ 26

15 U.S.C. § 78t(a) ................................................................................................. 26

15 U.S.C. § 78u–4(b) ............................................................................................ 23

15 U.S.C. § 78u–5(c) ...................................................................................... 20 n.11

26 U.S.C. § 7434 ................................................................................................... 27

I.R.C. § 1001 ..................................................................................................... 9, 25

I.R.C. § 4985 ........................................................................................... 31, 32, 33

Wis. Stat. § 180.0601 ...................................................................................... 38, 39

Wis. Stat. § 180.0826 ........................................................................................... 35

Wis. Stat. § 180.0827 ..................................................................................... 30 n.14

Case 2:16-cv-01093-PP   Filed 04/03/17   Page 7 of 49   Document 56

Wis. Stat. § 180.0828 ................................................................................................ *passim*

**Other Authorities**

Kenneth B. Davis, Jr., *The Business Judgment Rule in Wisconsin*,
   2015 WIS. L. REV. 475  ....................................................................................... 30, 35

Motion Hearing Decision, *Goldfinger* v. *Journal Comm'ns Inc.*,
   No. 14-CV-6910 (Milw. Cty., Nov. 12, 2014) ........................................................ 29

Transript of Decision on Motion to Dismiss, *In re Tomotherapy, Inc. Shareholder Litig.*,
   No. 11-CV-1183 (Dane Cty., May 12, 2011) .............................................................. 5

Transcript of Preliminary Injunction Hearing, *Gumm et al.* v. *Molinaroli et al.*,
   No. 16-CV-01093 (E.D. Wis. Jan. 4, 2017).................................................... 20 n.10

## INTRODUCTION

This action alleges violations of proxy and fiduciary duty law in connection with a merger that achieved significant gains for all shareholders, including plaintiffs here, and was overwhelmingly approved by them. This Court should follow the well-established path set out by courts in this district and circuit and around the country requiring dismissal of such second-guessing, after-the-fact claims.

On January 25, 2016, following months of arm's-length negotiations, Johnson Controls, Inc. ("JCI") and Tyco International plc ("Tyco") jointly announced they had entered into a definitive merger agreement. As was made clear at that time and in the final joint proxy statement/prospectus (the "Proxy") publicly filed on July 6, 2016, under the terms of the agreement: the combined company—to be renamed Johnson Controls International plc ("JCplc")—would be domiciled in Ireland, but its operational headquarters would remain in Milwaukee; JCI shareholders would own a 56 percent majority of the combined company; and the merger would be a taxable event for JCI shareholders. The Proxy also disclosed that the merger was expected to generate hundreds of millions of dollars in annual operational and tax synergies. JCI's stock rose by over 27 percent between the announcement of the merger and the shareholder vote. With all of the salient facts clearly disclosed, 97 percent of JCI shareholders who voted on the deal approved it. The deal closed on September 2, 2016.

Plaintiffs, not surprisingly, do not take issue with the "business or financial merits of the Merger." Amended Complaint ("Compl.") ¶ 8 (Dkt. No. 53). Nevertheless, this putative class action seeks damages on behalf of (1) a class of essentially all former JCI shareholders on the grounds that they were improperly "diluted" by a merger that resulted in their owning a 56 percent majority of the combined company; and (2) a class of JCI shareholders that held their shares in taxable accounts (a group plaintiffs misleadingly label the "Minority Subclass," even

though there was only one outstanding class of JCI stock) and who thus may be required to pay taxes on the gain they garnered in the transaction.

Plaintiffs attempt to obscure the reality that they have no viable claims in 195 pages and 402 paragraphs of dizzying assertions. But this sheer excess of allegations cannot hide the fact that the Amended Complaint is legally deficient. Indeed, this Amended Complaint should proceed no further because of a few facts plaintiffs themselves allege (or fail to allege):

- As plaintiffs concede, the Proxy sent to shareholders made plain both of the principal aspects of the deal with which plaintiffs now take issue: that the merger "will be *taxable*" to JCI shareholders (Compl. ¶ 185(c) (citing Proxy at 114) (emphasis added)) and that JCI shareholders are "expected to own approximately *56%*" of the combined company (Compl. ¶ 201(j) (citing Proxy at 246) (emphasis added)). No further disclosure was required.

- Not only can plaintiffs not take issue with the "business or financial merits of the Merger" (Compl. ¶ 8), they affirmatively allege that it was for the benefit of JCI (*see, e.g.*, Compl. ¶¶ 61, 324). No duty was breached.

- Plaintiffs never allege that Tyco, the merger counterparty whose shareholders also had to approve the transaction, would have agreed to a different deal than the one actually and overwhelmingly approved by both sets of shareholders. With regard to one of the complained of deal terms—the Adient spin-off—plaintiffs allege to the exact contrary: that this was significant to Tyco. *See, e.g.*, Compl. ¶ 180. No opportunity was lost.

At bottom, plaintiffs' real grievance is they want a different deal than the arm's-length transaction, negotiated and agreed to in good faith by the parties, fully disclosed to shareholders,

and overwhelmingly approved by them. But there is no basis under federal proxy or state fiduciary duty laws for such a "do it differently" challenge. *See Santa Fe Indus., Inc.* v. *Green*, 430 U.S. 462, 478-80 (1977) (federal proxy law does not provide basis to challenge boards' business judgment); *Data Key Partners* v. *Permira Advisers LLC*, 2014 WI 86, ¶34, 356 Wis. 2d 665, 849 N.W.2d 693 (business judgment rule "precludes courts from second-guessing business decisions").

There are multiple additional legal grounds requiring dismissal. Plaintiffs' primary federal claim under Section 14(a) fails for each of three additional independent reasons (*see* Point I, *infra*):

*First*, plaintiffs fail properly to allege a false and misleading statement under the Private Securities Litigation Reform Act of 1995 (the "Reform Act"), which applies to Section 14(a) claims. *See, e.g.*, *Beck* v. *Dobrowski*, 559 F.3d 680, 681-82 (7th Cir. 2009).

*Second*, Section 14(a) only provides a remedy where there have been "material" misstatements or omissions, taking into account the "total mix" of information otherwise available. *See, e.g.*, *Goldfinger* v. *Journal Commc'ns Inc.*, 2015 WL 2189752 at *2 (E.D. Wis. May 8, 2015) (citing *TSC Indus., Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449 (1976)). Plaintiffs have cobbled together paragraph after paragraph of "facts" that they say they wish they had known. But even assuming that such disclosures were in fact not made, nothing on this laundry list is material. *Himmel* v. *Bucyrus Int'l, Inc.*, 2014 WL 1406279, at *17 (E.D. Wis. Apr. 11, 2014) ("omitted facts are not material simply because some shareholders may find the information helpful"). This is particularly so in light of plaintiffs' concession that the fundamental matters as to which they complain *were* disclosed.

*Third*, plaintiffs have not and cannot properly plead loss causation—actual pecuniary harm caused directly by the alleged proxy violations. *See, e.g.*, *Tse* v. *Ventana Med. Sys., Inc.*,

297 F.3d 210, 223 (3d Cir. 2002); *Journal Commc'ns*, 2015 WL 2189752 at *4; *see also* Compl. ¶ 8 ("it is . . . not JCI's acquisition of Tyco itself" that "cause[d] the injuries to Plaintiffs"). Their attempt to plead around this fatal flaw is unavailing: They argue that the merger could have been structured differently so that JCI was not reincorporated in Ireland, but there is no allegation that such a hypothetical alternative was on the table between the merging parties, let alone would have been agreeable to Tyco—which had previously chosen to move offshore itself. Plaintiffs' argument is far too speculative to support a claim under Section 14(a).

Plaintiffs' remaining federal claims likewise fail. The controlling-person claim under Section 20(a) of the Exchange Act falls with their Section 14(a) claim—without a primary violation, there can be no secondary one. (*See* Point I.E, *infra*.) And, because plaintiffs cannot plead the basic elements of a Taxpayer Bill of Rights claim, including that any tax submission was deliberately false, that claim fails as well. (*See* Point II, *infra*.)

Plaintiffs' hodgepodge of state-law claims fares no better. Plaintiffs' breach of fiduciary duty claim fails because plaintiffs have not met the stringent requirements of Wisconsin law. (*See* Point III, *infra*.) Under Wisconsin statutory law, fiduciary duty claims may only be brought in specified, enumerated circumstances, all requiring a showing of intentional misconduct or bad faith. *Data Key*, 2014 WI 86, ¶33. No such allegations have been made here. Indeed, given plaintiffs' allegation that the Individual Defendants acted *to benefit JCI* (Compl. ¶¶ 61, 324(c)), they cannot allege bad faith. Numerous Wisconsin courts, and federal courts applying Wisconsin state law, have made clear that claims such as these—challenging the judgment of an independent board in agreeing to an arm's-length merger, subject to a shareholder vote—are exactly the kind of second-guessing that the business judgment rule prohibits. *See, e.g.*, *Data Key*, 2014 WI 86; *Dixon* v. *Ladish Co.*, 785 F. Supp. 2d 746, 750 (E.D. Wis. 2011), *aff'd sub nom. Dixon* v. *ATI Ladish*

*LLC*, 667 F.3d 891 (7th Cir. 2012); Trans. of Decision on Mot. to Dismiss at 65-66, *In re Tomotherapy, Inc. Shareholder Litig.*, 11-CV-1183 (Dane Cty. May 12, 2011) (Babler Ex. B).

Perhaps in tacit recognition that their principal state-law claim is barred by the business judgment rule, plaintiffs tack on nine additional state law counts, alleging a smorgasbord of tort, statutory, and contract theories. But these claims presume contractual rights where none exist, egregiously misread Wisconsin corporate law, and necessarily fail with (or simply duplicate) the fiduciary duty claim. All require dismissal. (*See* Point IV, *infra*.)

The nearly 200-page Complaint is wholly lacking in merit, fails to state the elements of any claim, and should be dismissed in its entirety.

## BACKGROUND

### A. Background of the merger

JCI, a Wisconsin corporation, was a global diversified technology and industrial leader. Compl. ¶ 46. Tyco, an Irish company, was the world's largest fire protection and security company. Proxy at 95.[1] In 2015, both companies considered a variety of strategic opportunities, including potential mergers. Proxy at 96-98. Discussions between JCI and Tyco gained traction in October 2015 (*id.* at 99), and, over the following months, both sides brought in legal and financial advisers and participated in arm's-length negotiations. In January 2016, JCI and Tyco announced the definitive merger agreement which remained subject to shareholder approval. *Id.* at 7-8.

---

[1] The Proxy is attached as Exhibit 1 to defendants' motion to dismiss. Though it was not attached to the Amended Complaint, "documents submitted with a motion to dismiss may be considered part of the pleadings if they are referred to in the plaintiff's complaint and central to a claim." *Bucyrus*, 2014 WL 1406279, at *1 (citation omitted); *see also Williamson* v. *Curran*, 714 F.3d 432, 436 (7th Cir. 2013). On this motion, all well-pleaded allegations in the Amended Complaint are accepted as true unless contradicted by other documents the Court is permitted to consider. *Bogie* v. *Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the non-moving party.").

**B.      Structure of the merger, terms of the merger agreement, and key disclosures**

As disclosed in the Proxy filed on July 6, 2016, the merger was structured as a reverse merger, in which Jagara Merger Sub LLC, a Wisconsin limited liability company, would merge with and into JCI, with JCI surviving the Merger.  *Id.* at 96; Merger Agreement § 1.1.  Tyco (the ultimate parent of Jagara Merger Sub) would become the parent of the combined group and be renamed JCplc.  Proxy at 96.  One result of this structure was that the parent company of the combined group would remain a tax resident of Ireland.

In addition to including all required material information, the Proxy made clear all the things about which plaintiffs now complain:  primarily (i) that the consideration exchanged in the merger would result in JCI shareholders owning 56 percent of the combined company; and (ii) that the merger would be taxable for JCI shareholders.

**1.      *JCI shareholders would own 56 percent of the combined company.*** The Proxy noted repeatedly that, after the merger, "Johnson Controls shareholders and Tyco shareholders are expected to own approximately 56% and 44%, respectively, of the issued and outstanding ordinary shares of the combined company."  Proxy at 1, 20, 21, 48, 96, 112, 115, 176, 178, 180, 246.  As with any merger, the deal had to be agreed to by both sides, and from early in the discussions the parties negotiated not only the consideration to be paid to JCI shareholders, but also the premium to be paid to Tyco.  *Id.* at 101.  Ultimately, the parties determined that the aggregate consideration to JCI shareholders, in exchange for each JCI share, would include an option to elect "to receive either one ordinary share of the combined company or $34.88 in cash, subject to proration," thus providing JCI shareholders the choice of "immediate value" in cash or long-term equity value in the combined company.  *Id.* at 112.[2] The

---

[2]      The per-share cash price was set to be "equal to the five-day volume weighted average price of a Johnson Controls common share prior to the signing of the merger agreement."  Proxy at 109.

Proxy also disclosed that, because of the potential for proration, JCI shareholders "who make the cash election or the share election will not always receive the form of merger consideration that they elect to receive." *Id.* at 114.[3] Tyco shareholders would receive 0.955 shares of JCplc for each Tyco share. *Id.* at 112.

        **2.**      ***The merger would be taxable to JCI shareholders.***   JCI and Tyco also took pains to make clear that the transaction would be "taxable" to JCI shareholders. *Id.* at 17, 39-40, 225. The Proxy stated that each JCI shareholder would "generally recognize taxable capital gain or loss" equal to the difference between (i) the value of the combined company shares and cash received in the merger; and (ii) the holder's tax basis in the JCI stock surrendered in the merger. *Id.* at 18, 40, 224-26, 230. Given the particularized nature of the tax implications based on the individual circumstances of any shareholder, throughout the Proxy JCI noted that it did not and could not know how this would impact each shareholder. Thus, the company recommended, repeatedly and clearly in the Proxy, that shareholders read carefully the description of potential tax consequences and seek independent tax advice before voting. *Id.* at 17, 40, 225.

### C.  The fairness opinions, unanimous board approval, and overwhelming shareholder approval of the merger

       JCI engaged two outside financial advisers, Barclays and Centerview, to advise on the fairness of the consideration to JCI shareholders. After due diligence, both deemed the aggregate consideration fair. *Id.* 23-25; 115-16. Those advisers then issued fairness opinions that were included in full in the Proxy, and that were based on a variety of valuations of JCI, a summary of which was provided. *See id.* at 115-32, Annexes C-D. Plaintiffs incorrectly allege that the financial advisers were hired to opine on the fairness of the transaction to the company alone.

---

[3]        Ultimately, JCI shareholders who elected to receive shares in the merger received approximately $5.7293 in cash and .8357 shares of JCI plc per share of JCI. *See* JCI plc I.R.S. Form 8937 (Ex. 5). Plaintiffs quote different numbers at Compl. ¶ 72 with no citation.

Compl. ¶ 213.  Not so:  They opined specifically as to the fairness of the transaction to "the holders of Johnson Controls common stock" and found that "the aggregate merger consideration to be paid to the holders of Johnson Controls common stock (other than excluded shares) pursuant to the merger agreement was fair, from a financial point of view, to such holders."  Proxy at 24, 25.

With these recommendations in hand, and after months of negotiations and review of the terms of the transaction with the aid of legal counsel, the boards of directors of both JCI and Tyco unanimously voted to approve the merger in January 2016.  *Id.* at 23, 72.  As disclosed in the Proxy (*id.* at 112-15), the JCI board considered many aspects of the merger, both positive and negative:  On the plus side, it considered, among other things, ongoing expected synergies (both operational and tax), the opportunity for JCI shareholders to own shares in the combined company along with receiving immediate value through cash, that the combined company would remain headquartered in Milwaukee, and that the combined company expected to continue to be able to pay dividends.  *Id.* at 112-14.  On the potentially negative side, the board considered, among other things, that the merger would be taxable to JCI shareholders, and that the proration may cause shareholders not to receive the exact consideration they elected.  *Id.* at 114.

Six weeks after the Proxy, which publicly disclosed all of the material facts about the transaction and the board's consideration of the merger, 97 percent of the JCI shareholders who voted approved the deal.  JCI Form 8-K, dated Aug. 17, 2016 at 2 (Ex. 2).  The deal closed on September 2, 2016.  Compl. ¶ 1.

### D.     Proceedings to date

On August 16, 2016, the day before the merger vote, five plaintiffs filed a complaint alleging, among other things, breach of fiduciary duty and violation of federal proxy laws.  Dkt.

No. 1.[4]  The original complaint alleged that the merger was a reorganization subject to § 368, and

thus § 367, of the Internal Revenue Code (the "IRC"), which would have required a comparison

of potential tax at the corporate and shareholder levels to determine which would be paid.

Plaintiffs alleged that this required comparison made it impossible for JCI to know with certainty

at the time of the Proxy whether § 367(a) (shareholder level) or § 367(b) (corporate level) would

apply to the merger, *see, e.g.*, Dkt. No. 1 ¶ 130; *id.* at ¶¶ 117-39, which, in turn, made the

statements that the merger would be "taxable" to shareholders necessarily misleading. *Id.* ¶ 130.

Plaintiffs alleged that the "choice" to make the merger taxable harmed those shareholders

holding shares in taxable accounts, who would, in their view, bear the brunt of tax consequences

of the merger. *Id.* ¶ 131.  Plaintiffs also asserted other allegations regarding, *inter alia*, the

"dilution" of JCI's ownership of the combined company to less than 60 percent. *E.g.*, *id.* ¶ 146.

     Nearly six weeks after filing their initial complaint (and one month after the close of the

merger), on September 30, 2016, the plaintiffs moved for a preliminary injunction seeking

primarily to prevent defendants from filing certain tax forms with the IRS that would describe

the merger as taxable—precisely as disclosed in the Proxy.  *See generally* Dkt. No. 15.  In those

proceedings, defendants successfully showed that, in fact, the so-called "IRC § 367(a)/(b)

Dichotomy" had no bearing on the merger, and that the merger was instead subject to IRC

§ 1001 which, as fully disclosed in the Proxy, made the transaction taxable to JCI shareholders

and allowed shareholders to recognize both gains and losses (as opposed to only gains under

§ 367).  *See generally* Dkt. Nos. 36-38.  On January 25, 2017, this Court denied the preliminary

injunction motion, noting that "it is the defendants who ground their arguments—as to the

---

[4]     On November 14, 2016, the Court appointed as Lead Plaintiffs five shareholders of JCI, including one of
the original named plaintiffs.  Dkt. No. 40.  Lead Plaintiffs are represented by the same counsel as the original five.

fiduciary duty claim—in Wisconsin law." Dkt. No. 52 at 21. Plaintiffs did not even *attempt* to argue that they had any likelihood of success on any federal claim.

### E.  The Amended Complaint[5]

On February 15, 2017, plaintiffs filed a 195-page, 402-paragraph Amended Complaint. The profuse allegations boil down to the same two main gripes in the original complaint:  (1) that they ended up with less of the combined company than they would have liked; and (2) that they will have to pay taxes on their gains that they would prefer not to pay.

Rather than abandon their dismantled arguments regarding the applicability of § 367 to the merger, plaintiffs instead left that section from their initial complaint virtually unchanged in their present Amended Complaint.  *Compare* Dkt. No. 1 ¶¶ 117-39 *with* Compl. ¶¶ 148-74. They walk through the same wholly speculative calculation of the potential amounts owed under § 367(a) and § 367(b), but do not deny that their hypothetical alternative would have been virtually unprecedented and highly contingent:  Indeed, on the preliminary injunction, plaintiffs were compelled to concede that even if § 367 had applied, it was entirely speculative whether the company or its shareholders would have borne the tax required.  Dkt. No. 1 ¶¶ 122-30; Dkt. No. 15 at 10.  In contrast, as plaintiffs also concede, the merger actually agreed to and as actually structured resulted in certain benefits (both tax and operational) to JCI and JCplc.  Compl. ¶ 22.

### ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  While the Court must "accept well-pleaded facts of the complaint as true," it need not accept "legal conclusions" or "conclusory statements."  *Alam* v. *Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th

---

[5]      Throughout the Complaint, plaintiffs utilize several different defined terms to describe the various groups of defendants.  *See* Compl. ¶¶ 45, 49.  Capitalized terms are used here as defined therein.

Cir. 2013). *Twombly* "teaches that a defendant should not be burdened with the heavy costs of pretrial discovery that are likely to be incurred in a complex case unless the complaint indicates that the plaintiff's case is a substantial one." *Beck*, 559 F.3d at 682.

As a threshold matter, the Amended Complaint starkly violates the mandate of Federal Rule of Civil Procedure 8(a) that a complaint "must" contain a "short and plain statement of the claim." It also violates Rule 8(d)(1): "Each allegation must be simple, concise, and direct." Indeed, the Amended Complaint here is 76 pages *longer* than the "seemingly interminable" one found by the Seventh Circuit to "violate[] the letter and the spirit" of Rule 8 in *Vicom, Inc.* v. *Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 776 (7th Cir. 1994). Nevertheless, even if the Court thinks it proper to work its way through this prolix pleading, dismissal is the proper course.

## I. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 14(A) AND RULE 14A–9 AND UNDER SECTION 20(A).

To state a claim under Section 14(a) and Rule 14a–9, a plaintiff must adequately plead three elements: "(1) a proxy contained a material misrepresentation or omission, (2) such misrepresentation or omission caused the plaintiff injury, and (3) the proxy was an essential link in the accomplishment of the transaction." *E.g.*, *Bucyrus*, 2014 WL 1406279, at *13. It must do so in accordance with the requirements of the Reform Act (*Beck*, 559 F.3d at 681-82), which was enacted to stop the "abusive[]" practice whereby shareholder lawsuits were imposing "substantial costs on companies and individuals whose conduct conforms to the law." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *see also Journal Commc'ns*, 2015 WL 2189752 at *4.

Though the Section 14(a) allegations are difficult to follow, let alone summarize, plaintiffs seem to complain primarily about two purported consequences of the deal: (i) that it was taxable for JCI shareholders; and (ii) that the consideration exchanged in the merger resulted

in JCI shareholders owning less than 60 percent of the combined company.  Each of these facts was disclosed, and this is fatal to plaintiffs' claim.  Tacitly recognizing this, plaintiffs allege that the disclosures were somehow made misleading by a series of "omissions."  But this cannot save their claim, for the "total mix" of information included repeated and clear disclosures of all aspects of the deal with which plaintiffs now take issue.  *See, e.g.*, *I. Meyer Pincus & Assocs., P.C.* v. *Oppenheimer & Co.*, 936 F.2d 759, 762-63 (2d Cir. 1991) (rejecting securities claim in part because "the prospectus states exactly the 'fact' that [plaintiff] contends has been covered up").  Plaintiffs' real complaint is that they do not like the deal approved by the shareholders.  But, as the Supreme Court long ago made clear, the proxy laws are not the appropriate vehicle for these kinds of business complaints.  *See Santa Fe Indus.*, 430 U.S. at 478.

Regardless, as demonstrated below, the Amended Complaint (i) utterly fails to comply with the heightened pleading requirements of the Reform Act, which require, among other things, that each alleged material omission be tied directly to a specific statement made materially misleading by such omission; (ii) does not plead a material misstatement or omission in any event; and (iii) does not plead any loss, let alone one caused by any alleged material omission or misstatement.  Courts in this circuit and district hold plaintiffs bringing Section 14(a) claims accountable for meeting their burden of pleading each element in conformity with *Twombly* and the Reform Act, and cases are routinely dismissed when, as here, they fail to do so.  *See, e.g.*, *Beck*, 559 F.3d at 681; *Journal Commc'ns*, 2015 WL 2189752 (Randa, J.); *Bucyrus*, 2014 WL 1406279, at *11 (Clevert, J.); *Dixon*, 785 F. Supp. 2d at 750 (Stadtmueller, J.).

A.      **The Amended Complaint fails to plead in conformity with the Reform Act.**

Under the Reform Act, plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with

particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The Amended

Complaint utterly fails to do so.

In support of their Section 14(a) claim, plaintiffs point to 65 paragraphs (spanning 82

pages) of the Amended Complaint in which they cite more than 80 block quotations from the

Proxy (several of which go on for multiple pages), some of which they claim were made

misleading due to allegations in an assortment of preceding paragraphs, and all of which they

claim were rendered misleading due to more than 130 alleged omissions. *See* Compl. ¶ 307

(citing Compl. ¶¶ 183-248). This is impermissible. The courts have aptly termed this improper

method of pleading "puzzle pleading" because it "requires the Court and the defendants to piece

together exactly which statements the plaintiff is challenging and which allegations contradict

those statements." *Constr. Workers Pension Fund-Lake Cty. & Vicinity* v. *Navistar Int'l Corp.*,

2014 WL 3610877, at *4 (N.D. Ill. July 22, 2014) ("Courts around the country have made clear

that a complaint does not satisfy the PSLRA's pleading standards when it quotes the defendant at

length and then uses a stock assertion that the statement is false and misleading for reasons stated

in an earlier paragraph," citing cases from the Second and Ninth Circuits, Northern District of

Illinois, Eastern District of Wisconsin, and Northern District of California).

Here, plaintiffs' puzzle pleading is puzzling indeed. The "mash-up" of block quotations

and imprecise allegations cannot distract from or satisfy the heightened pleading requirements of

the Reform Act. *Conlee* v. *WMS Indus., Inc.*, 2012 WL 3042498, at *4 (N.D. Ill. July 25, 2012).

Rather, plaintiffs are required to identify with specificity (1) what other statements became

misleading or false as a result of any alleged omission; and (2) why those statements were so

transformed. They have done neither.

Plaintiffs cannot satisfy the first requirement by pointing to hundreds of block quotations in the Proxy. *See, e.g.*, *id.* (finding "sixteen page mash-up of block quotes, snippets, parentheticals" improper); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 984 (E.D. Wis. 2009) (decrying reproduction of "thirty, single-spaced pages of press releases" in complaint); *Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, 506 F. App'x 32, 38 (2d Cir. 2012) (finding plaintiff's "complaint fell far short of [the Reform Act's] standard, basically leaving the District Court to search the long quotations in the complaint for particular false statements"). Nor does plaintiffs' haphazard use of bold and italics overcome this deficiency. This inconsistent and unexplained emphasis "does nothing to clarify" what statements plaintiffs allege were misleading. *Navistar*, 2014 WL 3610877, at *5. For example, plaintiffs cite the Proxy's disclosure that "the Johnson Controls board of directors determined that the merger agreement . . . [was] advisable, *fair to, and in the best interests of* Johnson Controls and *its shareholders*." Compl. ¶ 223 (citing Proxy at 23) (emphasis added by plaintiffs). Yes: The board of directors did, and continues to, believe that the merger with Tyco was in the best interests of JCI and its shareholders. The excerpts from the Proxy, including those arbitrarily bolded and italicized passages, are neither misleading nor inaccurate.

Plaintiffs cannot satisfy the second requirement because they also fail to allege "an explanation of *why* any such transformed statement is in fact misleading or false." *Dixon*, 785 F. Supp. 2d at 750 (emphasis added). Vague allegations that the block-quoted disclosures were "false and misleading when made for failing to disclose" (Compl. ¶¶ 189, 195, 202, 248(c)) pages and pages of over a hundred items, labeled in conclusory fashion "material facts," does not pass muster under the Reform Act. *See Journal Commc'ns*, 2015 WL 2189752 at *4 (holding that Reform Act requires allegations of material omissions that both "rendered statements that Defendants actually

made misleading" *and* an explanation of "how any information allegedly omitted from the proxies had such an effect on a specific statement actually made" (quoting *Beck* v. *Dobrowski*, 2007 WL 3407132, at *6 (N.D. Ill. Nov. 14, 2007), *aff'd* 559 F.3d 680 (7th Cir. 2009))); *Navistar*, 2014 WL 3610877, at *4.

Taking just one collection of allegations reveals the deficiency of plaintiffs' pleading:[6]

- Paragraph 184 points to the January 25, 2016 announcement that the merger would be taxable to JCI shareholders, and paragraph 185 collects four block quotes from the Proxy—spanning two pages and nearly 700 words—repeating that (true) fact. Compl. ¶¶ 184-85 (citing Proxy at 17-18, 39-40, 114, 225).

- Paragraph 186 then alleges that "the representations"—whether that means every word, just the bolded or italicized ones, or some combination, who knows—in those two immediately preceding paragraphs (along with representations made in two much earlier paragraphs) were "false and misleading when made for the reasons alleged" in forty-one paragraphs (twenty pages earlier) and "for failing to disclose the following material facts," the list of which goes from subparagraph (a)—which includes ten subparts—to subparagraph (s), spanning four more pages. Applying basic math, there are thousands of potential combinations of claimed misstatements and omissions that allegedly rendered the statements misleading. The Reform Act does not sanction this method of pleading. Here, none of the thirty-two subparagraphs or subparts in paragraph 186 is linked to any of the "misleading" statements in the prior paragraphs, and no explanation is offered as to

---

[6]     This Point I.A examines paragraphs 184-87 as representative of the Complaint's deficiencies under the Reform Act's pleading standards. The structure and deficiencies described in relation to these paragraphs are mirrored by those in paragraphs 188-190, 194-95, 201-03, 204-07, 209-10, 214-26, 228-43, and 244-47, each of which includes a collection of block quotes from the Proxy, a vague assertion like "[t]he statements and representations recited in the preceding [] paragraphs were false and misleading when made . . . for [f]ailing to disclose the matters alleged in the preceding [paragraph(s)] and the matters alleged elsewhere herein" (*see* Compl. ¶ 248(c)), and a barrage of "omissions" with no regard for the purposely exacting requirements imposed by the Reform Act.

*how* these subparagraphs rendered such statements misleading.  For example, plaintiffs allege defendants should have disclosed "[w]hether, in connection with its consideration of the [deal], the Director Defendants considered . . . that the need to pay capital gains and ordinary income taxes would particularly affect long-term Minority Taxpaying JCI Shareholders with a low basis in their JCI shares and could, among other things, force them to sell a significant number of their shares to provide the cash to pay taxes." Compl. ¶ 186(a)(i).  But plaintiffs do not explain how not disclosing whether that particular scenario was considered somehow made it misleading to tell shareholders the *accurate fact* that the transaction "would be taxable."

- Paragraph 187 then picks up where paragraph 186 left off, alleging in subparagraphs (a) through (j) additional "material facts" that inexplicably rendered paragraphs 184 and 185 misleading.  Again, plaintiffs offer no explanation as to *why* or *how* such statements became so misleading.  And, of course, the excerpts from the Proxy disclosing the taxability of the transaction remain indisputably and concededly true.

In sum, plaintiffs have not met the heightened pleading requirements of the Reform Act. This alone is fatal to the Section 14(a) claim.

**B.      The Amended Complaint fails to plead a material misrepresentation or omission.**

Further, Section 14(a) provides a remedy only where there has been a "material" misrepresentation or omission.  "An omitted fact is 'material' if there is 'a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" *Journal Commc'ns*, 2015 WL 2189752 at *2 (citing *TSC*, 426 U.S. at 449).  "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made

available." *Id.* On the other hand, "omitted facts are not material simply because some shareholders may find the information helpful." *Bucyrus*, 2014 WL 1406279, at *17. Plaintiffs have failed to satisfy materiality.

Though too unwieldy to go through one by one (as noted, paragraph 186 alone includes 32 "omissions"), examining a collection of purported "omissions" belies any allegation of materiality:

1. ***The Proxy disclosed the structure of the transaction and that it would be taxable.*** Though the fact that the merger would be taxable to JCI shareholders was repeatedly disclosed, plaintiffs nonetheless insist they would have liked to know more. For example, beginning with that same paragraph 186, one of the ten claimed omissions in subparagraph (a) is "whether" the JCI directors "considered" various factors and alternatives—including "whether to reject reincorporating JCI in Ireland" to "spare" certain shareholders from having to pay their taxes. Compl. ¶ 186(a). But such "play-by-play details" of board consideration are exactly the kind of information courts in this circuit have deemed immaterial in assessing claims brought under Section 14(a). *See, e.g.*, *Bucyrus*, 2014 WL 1406279, at *17-18. Moreover, "[a] plaintiff does not state a disclosure claim by asking whether or not something happened." *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1132 (Del. Ch. 2011); *see also In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 736 (Del. Ch. 1999), *aff'd sub nom. Walker* v. *Lukens, Inc.*, 757 A.2d 1278 (Del. 2000) ("In sum, it is not enough simply to pose questions that are not answered in the proxy statement."); *In re Plains Expl. & Prod. Co. Stockholder Litig.*, 2013 WL 1909124, at *10 (Del. Ch. May 9, 2013) ("asking 'why' does not state a meritorious disclosure claim").

In subparagraph (b), plaintiffs assert that the Proxy should have disclosed "[a]ll facts relevant to the statements" that the merger would be taxable to JCI shareholders. Compl. ¶ 186(b). But certainly *all* facts relevant, particularly as to an aspect of the deal that was clearly

and repeatedly disclosed, cannot possibly be material. Indeed, courts in this circuit and around the country confirm that "'tell me more' pleading does not state a Section 14(a) claim." *Journal Commc'ns*, 2015 WL 2189752 at *5 (citing *TSC*, 426 U.S. at 448-49). Certainly, plaintiffs' "tell me everything" pleading does not suffice.

Throughout paragraphs 186 and 187, plaintiffs allege a host of disclosures they would have liked regarding the availability, applicability, and consequences of hypothetical alternative structures that might have been subject to different provisions of the IRC. Compl. ¶¶ 186(a)-(s), 187(a)-(j). But the *Bucyrus* court made clear that even *rejected* terms are "play-by-play details" that a Proxy need not disclose: *a fortiori* there is no need to disclose *hypothetical* terms. *Bucyrus*, 2014 WL 1406279, at *17-18. "Stockholders were asked to approve a [particular] transaction; no lack of discussion about the actual valuation of a discussed [alternate transaction] misled stockholders about the transaction at hand or how it came to be." *Id.* at *17; *see also In re Lukens*, 757 A.2d at 736 ("[R]equiring disclosure of every material event that occurred *and* every decision not to pursue another option would make proxy statements so voluminous that they would be practically useless.").[7]

2. ***The Proxy disclosed that JCI shareholders would own 56 percent of the combined company.*** Plaintiffs next quarrel with the completeness of the Proxy's disclosures surrounding the alleged implied value of $34.88 per share of JCI in the cash component of the merger consideration, insisting that the Proxy should have disclosed, among other things, that "[t]he $34.88 forced buyback price was below or at the bottom of the ranges of fair values of JCI

---

[7] Defendants are not required to disclose all financial information "required for stockholders to independently determine fair value" of the transaction being voted on. *Bucyrus*, 2014 WL 1406279, at *19. It thus follows that they need not disclose "all calculations and methodologies in support of the option chosen" (Compl. ¶ 186(b)(iii)) in a hypothetical balancing test concerning another transaction that is not even alleged to have been on the table. *Desaigoudar* v. *Meyercord*, 223 F.3d 1020, 1024 (9th Cir. 2000) ("Section 14(a) and Rule 14a–9 do not require corporate officials" "to speculate about the value of potentially foregone opportunities and disclose the results whenever they might dissuade shareholders from adopting by proxy the officials' recommendations.").

shares determined by JCI's and Tyco's advisers."[8]  Compl. ¶ 202(e).  But plaintiffs' attempt to

label their displeasure with the deal price as a disclosure claim is unpersuasive.  "[O]nce full and

fair disclosure has occurred, the fairness of the terms of the transaction is at most a tangential

concern of the [Exchange Act]."  *Santa Fe Indus.*, 430 U.S. at 478.  Indeed, plaintiffs' supposed

range of fair values and other allegations regarding the defendant's "failing to disclose" facts

relating to the aggregate consideration are based entirely on calculations plaintiffs did *using

information in the Proxy.  See, e.g.*, Compl. ¶¶ 76, 202(e).  Not disclosing "pejorative

characterizations and adverse inferences which, it appears, the plaintiff has drawn without the

defendants' help" is not grounds for a disclosure claim.  *Klamberg* v. *Roth*, 473 F. Supp. 544,

553 (S.D.N.Y. 1979).  And, along with the fact that JCI holders would end up with 56 percent of

the combined company, it was also clearly and repeatedly disclosed that shareholders' election of

cash or shares was *always* subject to the possibility of proration depending on shareholder

choices.  Proxy at 1.  In fact, the Proxy contained several examples of the potential treatment of

1,000 shares of JCI stock in various potential scenarios.  *Id.* at 182-84.  There was no omission,

let alone a material one, with respect to the consideration exchanged in the merger.

>        **3.      *All other material facts were disclosed.***  Perhaps recognizing the

weakness of claiming omissions regarding these two fully disclosed facts, plaintiffs compile a

number of extraneous "material facts" they contend were likewise "omitted."  But this effort to

save the action with these ancillary matters is unavailing.  As a matter of both law and logic, a

---

[8]        Plaintiffs' characterization of the cash component as a "buyback" need not be credited as it is directly
contradictory to the Proxy and to other allegations in the Complaint:  As part of the aggregate consideration, JCI
shareholders were able to choose between receiving cash (at a rate of $34.88 per share), shares, or a mix of both as
consideration in the merger.  Those shareholders who opted for shares and faced proration were not selling their
shares of JCI back to JCI; shares of JCI *no longer exist*.  Proxy at 31; *see also* Compl. ¶ 46 ("*All* outstanding shares
of JCI common stock were exchanged for ordinary shares of JCplc.") (emphasis added).  The value of their new
shares of JCplc going forward will be set by the market, not by the merger.

plaintiff does not state a claim where the allegedly omitted fact is neither omitted nor true. *See I. Meyer Pincus & Assocs.*, 936 F.2d at 762-63. Plaintiffs attempt to defy that logic.

           a.   <u>The taxability of the Adient spin-off was disclosed.</u>  Plaintiffs assert defendants failed to disclose, among other things, that "[t]he delay of the Adient distribution from prior to the closing of the Inversion/Merger until after such closing . . . converted what would have been a tax-free distribution to a distribution taxable as ordinary income."[9] Compl. ¶ 195(c)(i). But plaintiffs ask the Court to ignore that all of the relevant information regarding that entirely distinct transaction was provided in the Information Statement first filed *by Adient* with the SEC on April 27, 2016.[10] The Proxy twice noted that "Adient has filed with the SEC a registration statement on Form 10 in connection with the spin-off, which includes an information statement describing the spin-off and Adient's assets and liabilities." Proxy at 30, 175; *see also id.* at 53. That information statement made clear, from its very first draft, that "the distribution will be treated as a *taxable distribution* by Johnson Controls to each Johnson Controls shareholder in an amount equal to the fair market value of the Adient ordinary shares received by such shareholder." Adient Information Statement at 162 (Ex. 3) (emphasis added). Such disclosures were part of the "total mix" of information available.[11]

---

[9]      Though irrelevant to the JCI/Tyco merger, and thus to this case, it is also not correct that all shareholders will be taxed at ordinary income rates on the Adient spin-off, as is clear from the document plaintiffs cite. *See* Dkt. No. 42-10 at 180-81 (noting that the dividends received "may be subject to reduced rates of U.S. federal income taxation, provided that certain holding period requirements and other conditions are satisfied").

[10]    *Garden City Emps.' Ret. Sys.* v. *Anixter Int'l, Inc.*, 2011 WL 1303387, at *16 (N.D. Ill. Mar. 31, 2011) ("SEC filings are publicly filed documents subject to judicial notice whether or not they are referred to in Plaintiffs' complaint."). Defendants' counsel cited the Information Statement at the January 2017 preliminary injunction hearing, yet plaintiffs chose to leave the false allegation in their Amended Complaint. Tr. of Prelim. Injunction Hr'g at 54:18-19 (Babler Ex. C).

[11]    *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 379 (E.D.N.Y. 2003) (finding no duty to disclose publicly available information and no failure to disclose where the allegedly omitted information was available in a separate form filed with the SEC and "specifically referred to" in the defendant's 10-K). Regardless, the Proxy itself disclosed the uncertainty around the Adient spin-off and warned that "there can be no assurance that the separation will occur within this timeframe, or at all, and the separation may be accomplished at a different time *or in a different manner.*" *See, e.g.*, Proxy at 5, 53 (emphasis added). These cautionary statements were sufficiently

b. The potential applicability of IRC § 304 was disclosed. Similarly, plaintiffs allege that JCI did not disclose the potential that certain portions of the merger consideration could be treated as ordinary income "until September 16, 2016." Compl. ¶ 129. To the contrary, the Proxy disclosed repeatedly that Section 304 of the IRC might apply, and that "a holder of Johnson Controls common stock that also owns, directly or constructively, Tyco ordinary shares immediately prior to the merger could be treated as receiving a dividend in an amount up to the fair market value of the total consideration received by such holder in the merger" without regard to such holder's gain or loss on its JCI shares. Proxy at 18, 40, 225-27. The September 2016 Additional Information statement, posted to JCplc's website, provides exactly the information that the Proxy promised would be available "as soon as reasonably practicable following the completion of the merger." *Id.* at 225.

c. Conclusory allegations cannot masquerade as omissions. Setting aside the fact that many of plaintiffs' "allegations" are actually conclusory statements unsubstantiated by any well-pleaded facts, the remaining alleged "omissions" are, at best, potential "fiduciary duty claims under a thin coat of federal paint." *Koppel* v. *4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999). "[A] shareholder cannot . . . 'bootstrap' [a breach of fiduciary duty] claim into a federal securities action by alleging that the disclosure philosophy of the statute obligates defendants to reveal either the culpability of their activities, or their impure motives for entering the allegedly improper transaction." *Panter* v. *Marshall Field & Co.*, 646 F.2d 271, 288 (7th Cir. 1981). This is precisely what plaintiffs attempt to do here. For example, plaintiffs accuse defendants of not having disclosed information about their alleged "tax avoidance schemes," and the "numerous perverse incentives and conflicting interests that pervaded the Merger." Compl. ¶ 243(a)-(k). But

---

specific to invoke the protection of "the [Reform Act] safe harbor" for "forward-looking statement[s]." *OFI Risk Arbitrages* v. *Cooper Tire & Rubber Co.*, 2015 WL 4036179, at *4 (D. Del. July 1, 2015); *see* 15 U.S.C. § 78u–5(c).

"a party does not state a claim under section 14(a) where the failure to disclose involves the 'true' motivations of the directors and so would require a court to probe the business judgment of the directors." *Washington Bancorporation* v. *Washington*, 1989 WL 180755, at \*17 (D.D.C. Sept. 26, 1989) (quotation omitted); *see also Coronet Ins. Co.* v. *Seyfarth*, 665 F. Supp. 661, 668 (N.D. Ill. 1987).

\*       \*       \*

The preceding were representative of the infirmities of the Amended Complaint, but all of the alleged misstatements or omissions fail for one or more of the following reasons:

- Section 14(a) does not require disclosure of all information a shareholder might want to know more about. *See* Point I.B.1-2, *infra*. For example, paragraphs 186(a)-(b), (f)-(h), (l)-(q), (s); 187(d); 202(g); 226; and 248(a)-(b) (and its 20 subparagraphs) are all requests for more, immaterial information, not material omissions.

- Section 14(a) is not implicated where an alleged "omission" was disclosed or is part of the "total mix" of information available to shareholders. *See* Points I, I.B.3, *infra*. For example, paragraphs 186(r); 187(f), (h)-(i); 189(b), (e)-(f); 202(e)-(l); 210(d); 226(m); 248(b); and 253(a)-(c) all contain allegations of "omissions" based on information plaintiffs could have found (or did find) in either the Proxy or the public domain.

- Section 14(a) does not require disclosure of facts about rejected, let alone theoretical or speculative, alternatives. *See* Point I.B.1, *infra*. For example, paragraphs 186(c)-(d), (i)-(k); 206; 226(d), (f), (h)-(j); and 248(b) all seek information on hypothetical scenarios on which shareholders were not voting.

- Section 14(a) does not require disclosure of adverse inferences. *See* Point I.B.2, *infra*. For example, paragraphs 186(a); 187(a), (c); 202(h)-(l); 205; 210(b); 226(m); 243(e), (h)-

(j); and 248(b) all allege omissions of inferences and conclusions plaintiffs wish the
Proxy had made based on facts already disclosed.

- Section 14(a) does not allow plaintiffs to "bootstrap" state law fiduciary duty claims into
  disclosure claims. *See* Point I.B.3, *infra*. For example, paragraphs 186(a), (b), (e); 187 (b),
  (e), (g), (i)-(j); 189(a)-(e); 195(a)-(c); 202(a)-(d), (f), (h), (m); 210(a), (c)-(e); 226(a)-(n);
  243(a)-(j); and 248(a)-(b) are all allegations about board actions, not disclosures.

At bottom, "no lack of discussion . . . misled stockholders about the transaction at hand or
how it came to be." *Bucyrus*, 2014 WL 1406279, at *17. Plaintiffs' "'tell me more' pleading
does not state a Section 14(a) claim." *Journal Commc'ns*, 2015 WL 2189752, at *5.

### C.     The Amended Complaint fails to plead loss causation.

The Reform Act and the governing case law also require plaintiffs to plead the essential
element of loss causation—that "the act or omission of the defendant alleged to violate this
chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u–
4(b)(4); *see Journal Commc'ns*, 2015 WL 2189752 at *5. "To show loss causation, a plaintiff
must prove both economic loss and proximate causation." *N.Y. City Emps.' Ret. Sys.* v. *Jobs*,
593 F.3d 1018, 1023 (9th Cir. 2010), *overruled on other grounds by Lacey* v. *Maricopa Cty.*, 693
F.3d 896 (9th Cir. 2012); 15 U.S.C. §§ 77bb(a)(1); 78u-4(b)(4); *Mogell* v. *Calhoun*, 2016 WL
3369233, at *8 (C.D. Ill. Mar. 15, 2016) ("economic harm must be pled"). Paragraphs 302-11,
setting forth Count I, make no mention of any harm caused by the Proxy and plaintiffs do not
otherwise tie any alleged injury to the host of alleged misrepresentations and omissions.
Elsewhere in the Amended Complaint, plaintiffs make two general allegations of harm to all JCI
shareholders and to the "Minority Subclass." Compl. ¶¶ 60-62. Both claims fail.

Courts have found that "approval of the sale of assets and reorganization caused plaintiff
shareholders 'monetary injury only if (a) [the company] would have been better off with no merger

at all; or (b) a more favorable exchange ratio would have been available if there had been full disclosure.'" *Swanson* v. *Am. Consumers Indus., Inc.*, 475 F.2d 516, 519 (7th Cir. 1973) (quoting *Dasho* v. *Susquehanna Corp.*, 461 F.2d 11, 31 (7th Cir. 1972)).  Plaintiffs have made clear that they do not challenge the "business or financial merits" of the transaction and that "it is . . . not JCI's acquisition of Tyco itself" that "cause[d] the injuries to Plaintiffs," essentially conceding that the company would not have been better off without the merger with Tyco.  Compl. ¶ 8.

The question, then, is whether more favorable terms could have been achieved had it not been for the allegedly incomplete Proxy.  There is simply no allegation in the Amended Complaint that Tyco would have accepted any terms other than those that were agreed upon between the merger parties after months of negotiation.  Courts consider an argument that shareholders "could have held out for a more favorable deal" but for an allegedly deficient proxy under the "lost opportunity" theory.  *Tse* v. *Ventana Med. Sys., Inc.*, 123 F. Supp. 2d 213, 223-24 (D. Del. 2000) (quotations omitted).  Under this theory, recovery of the "loss of a possible profit or benefit" is not permissible where that loss is "wholly speculative."  *Id.* at 223 (quotations omitted).  Where, as here, a plaintiff's pleading would ask the court "to hypothesize" as to whether an acquiring company would have given shareholders a more favorable deal and to hypothesize what that deal would be, "their claim for lost profits is wholly speculative."  *Id.* at 224.  Courts have declined to compensate such hypothetical damages.  *See, e.g.*, *id.*; *Goldkrantz* v. *Griffin*, 1999 WL 191540, at *8 (S.D.N.Y. Apr. 6, 1999), *aff'd*, 201 F.3d 431 (2d Cir. 1999).

Under this law, plaintiffs have not adequately alleged loss causation on either of their damage theories.  With respect to plaintiffs' allegation of "harm" to all shareholders caused by the so-called "dilution" of their holdings in the combined company, there is no allegation

whatsoever that another deal was possible.[12]  Regardless, *Jobs* is dispositive.  There, as here, the

plaintiffs' claim of injury was based on an alleged "reduc[tion in] a shareholder's percentage of

ownership."  *Jobs*, 593 F.3d at 1024.  The court found that this "dilution theory of economic loss

is unsupported in caselaw" and that "such conclusory assertions of loss are insufficient."  *Id.*

The so-called "Minority Subclass" fares no better on loss causation.  First, plaintiffs do not

allege loss: they have *gains* from the deal.  That is why they owe tax.  Paying IRS-required taxes

on gains is not a "loss" contemplated by Section 14(a).[13]  Regardless, once again, as even plaintiffs

allege, it is entirely speculative that some other result was possible.  There is nothing but

speculation in the Amended Complaint that the parties could have structured the transaction so that

§ 367(b) would apply, thereby avoiding shareholder level taxes.  Compl. ¶ 169; *id.* ¶¶ 154-71.  By

contrast, as plaintiffs concede, the structure agreed to, resulting in the application of § 1001,

allowed certain tax benefits for JCI, and thus all shareholders.  Compl. ¶ 145.

**D.     The Amended Complaint fails to plead a Section 14(a) claim as to the officer defendants.**

All else aside, it was utterly baseless for plaintiffs to have named as defendants on their

Section 14(a) claim Messrs. Stief, Guyett, and Janowski (alleged to be non-director officers of

JCI), and Ms. Bushman and Messrs. Conner, Goodman, and Lacy (former JCI directors who did

not sign the Proxy as they were not to become directors of the combined company).  "[T]o hold a

person liable for proxy violations, one must show, at the very least, a substantial connection

between the use of the person's name and the solicitation effort."  *Yamamoto* v. *Omiya*, 564 F.2d

1319, 1323 (9th Cir. 1977).  The Amended Complaint alleges only that "each of the Individual

---

[12]      Instead, plaintiffs have alleged that staying under the 60 percent threshold was for the benefit of the combined company (and its shareholders).  Compl. ¶ 112.

[13]      The Complaint also makes clear who really is responsible for plaintiffs' alleged injury:  Congress.  By their own admission, "[t]he injuries addressed in this action *arise from Congress*'s and the Department of Treasury's intention to impose a price to be paid for a U.S. corporation's tax inversion."  Compl. ¶ 58 (emphasis added).

*JCI/JCplc Defendants*"—*i.e.*, those who were to become directors of JCplc—consented to the Proxy filing.  Compl. ¶ 310 (emphasis added) (citing Preliminary S-4 dated April 4, 2016 Exhibits 99.4-99.9).  There is no allegation as to how any of the remaining Individual Defendants "permitt[ed] the use of his name to solicit any proxy" in violation of Commission rules.  15 U.S.C. § 78n(a).  Indeed, far from consenting to being named, Mr. Janowski's name appears nowhere in the Proxy.  Mr. Guyett and Mr. Stief are mentioned only a handful of times, primarily to describe their role in the merger negotiation or to disclose Mr. Stief's beneficial holdings.  *See, e.g.*, Proxy at 100, 319.  This falls far short of the liability standard.

> E.    **The Amended Complaint fails to state a plausible control-person claim under Section 20(a).**

To state a Section 20(a) claim, a complaint must satisfy three elements: "(1) a primary securities violation; (2) that each defendant exercised general control over the operations of [JCI]; and (3) that each defendant possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated."  *Bucyrus*, 2014 WL 1406279, at *13; 15 U.S.C. § 78t(a).  The Amended Complaint meets none.  It fails to allege the threshold requirement of an underlying violation of Section 14(a) or Rule 14a–9.  *See* Points I.A-C, *supra*.  Without a primary violation, there can be no secondary one.  And the Amended Complaint's allegations of control are insufficient:  Plaintiffs assert only that Individual Defendants were controlling persons because they "directly or indirectly controlled JCI, or were or are officers or directors of JCI/JCplc, and materially participated in the conduct giving rise to the liability asserted herein."  Compl. ¶ 309.  The "bare legal conclusion [] that the individual and corporate defendants were control persons" with "no facts, other than the Defendants' status as . . . senior managers, or directors" is not enough under Section 20(a).  *Starr* v. *!Hey, Inc.*, 2003 WL 21212596, at *4 (N.D. Ill. May 23, 2003).

## II. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE TAXPAYER BILL OF RIGHTS II.

Section 7434 "creates a damages cause of action by a victim against a person who 'willfully files a fraudulent information return with respect to payments purported to be made' to the victim." *Lenz* v. *Robert W. Baird & Co. Inc.*, 2017 WL 639316, at *6 (E.D. Wis. Feb. 16, 2017) (quoting 26 U.S.C. § 7434). "To create an actionable claim under 26 U.S.C. § 7434, the information return must itself be fraudulent, which requires it to be, among other things, inaccurate. Furthermore, a claim under 26 U.S.C. § 7434 requires proof of deceitfulness or bad faith in connection with filing an information return." *Cavoto* v. *Hayes*, 2010 WL 2679973, at *4 (N.D. Ill. July 1, 2010), *aff'd*, 634 F.3d 921 (7th Cir. 2011) (quotations omitted). Plaintiffs allege neither inaccuracy nor fraudulent intent.

Because the transaction was taxable to JCI shareholders—which plaintiffs concede—Sections 6042 and 6045 of the IRC (and the Regulations thereunder) required the mailing of Forms 1099 to shareholders, and § 6045B (and the Regulations thereunder) required JCI to file Form 8937. The forms were mailed and filed, and plaintiffs have not alleged that any information on those forms was inaccurate. This dooms Count II. Regardless, plaintiffs have not alleged fraudulent intent, "concealment or deception" with respect to the filing of these accurate information forms. *Cavoto*, 2010 WL 2679973, at *4 (quoting *Zell* v. *C.I.R.*, 763 F.2d 1139, 1144 (10th Cir. 1985)). Plaintiffs assert that defendants caused the transaction's taxability, which made these forms required. *See, e.g.*, Compl. ¶ 316. Allegations as to how an *accurate* form came to be are irrelevant to § 7434 claims. *Lenz*, 2017 WL 639316, at *6.

## III. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

It is settled Wisconsin law that the decision how to structure a transaction, including its tax effects, is left to the business judgment of a company's directors. *Data Key*, 2014 WI 86, ¶ 34

(quoting *Steven* v. *Hale-Haas Corp.*, 249 Wis. 205, 221, 23 N.W.2d 620 (1946)) ("The business of a corporation is committed to its officers and directors . . . ."). It is even more settled that actions taken in good faith and "'in the honest belief that [such] decisions were in the best interest of the company'" are protected by Wisconsin's strong business judgment rule. *Id.*, ¶33 (quoting *Reget* v. *Paige*, 2001 WI App. 73, ¶18, 242 Wis. 2d 278, 626 N.W.2d 302). Plaintiffs have repeatedly conceded that defendants structured the merger "for the benefit of JCI." Compl. ¶¶ 61, 324. The Court's inquiry should end here.

It is true that the merger was taxable to JCI shareholders. For some who held their stock in tax-advantaged accounts, those taxes could be deferred; others are tax-exempt entities. The Amended Complaint alleges that for some shareholders it is a burden to pay taxes. Compl. ¶ 17. But with a shareholder base as broad and diverse as JCI's, it is simply not possible to please each shareholder with every decision, and the law does not require that boards do so. Rather, it has long been understood that "directors may take whatever action that, in their proper exercise of business judgment, will best serve the interests of the *corporation or the entire body of shareholders*. That such action may adversely affect the interests of a particular shareholder subgroup will, in certain instances, be unavoidable." *Gilbert* v. *El Paso Co.*, 1988 WL 124325, at *10 (Del. Ch. Nov. 21, 1988), *aff'd* 575 A.2d 1131 (1990) (emphasis added).

Further, plaintiffs concede that the tax impact to the individual shareholders that they wish had been elevated above other considerations "could not [even] be known with certainty until after the closing of the Merger, if it can be known at all." Compl. ¶ 156. By contrast, the tax effects of the structure resulting from the merger as agreed were certain. Compl. ¶ 145. Wisconsin's strong business judgment rule protects the board's decision to enter into the transaction, and plaintiffs have not pleaded any cognizable exception to that well-established rule.

### A. The Amended Complaint fails to plead a sufficient basis to overcome Wisconsin's strong business judgment rule.

For over a century, Wisconsin courts have recognized that the common law business judgment rule "creates an evidentiary presumption that the acts of the board of directors were done in good faith and in the honest belief that its decisions were in the best interest of the company." *Reget*, 2001 WI App 73, ¶18; *see also Einhorn* v. *Culea*, 2000 WI 65, ¶19, 235 Wis. 2d 646, 612 N.W.2d 78 (describing business judgment rule as a "judicially created doctrine"). At the pleading stage, then, "a plaintiff must necessarily allege facts that make rebuttal of the presumption plausible. In other words, [a plaintiff] must allege facts that plausibly show the [defendants] failed to act in good faith and with a belief that their actions were in the company's best interest." *Dixon*, 785 F. Supp. 2d at 750. As Milwaukee County Circuit Judge Richard Sankovitz explained in another recent case challenging a board's decision to enter into a merger:

> *[Plaintiff] complain[s] about decisions having to do with getting the best deal for the shareowners. In making such a deal, the directors might be right, they might be wrong, but, as one of our state statutes and [*Data Key*] make quite clear,* absent evidence that the directors were elevating their own interests over the interests of other shareowners, they can't be sued for making a *deal* like this.

Mot. Hr'g Decision at 3, *Goldfinger* v. *Journal Comm'ns, Inc.*, No. 14-CV-6910 (Milw. Cty. Nov. 12, 2014) (Babler Ex. A) (emphasis added). Here, plaintiffs allege that the defendants were faced with five choices with respect to the merger, and that they chose the wrong ones. Compl. ¶ 23. But even if plaintiffs had alleged facts to support the conclusion that all five options were possible, this second-guessing is the epitome of what the business judgment rule exists to prevent. And because plaintiffs have not alleged that defendants acted in anything but the company's best interest—indeed, as noted, they actually allege that the defendants believed they

were acting in JCI's interest (Compl. ¶¶ 17, 61(a), 324(b))—the Court may not substitute its judgment for that of the informed JCI directors.[14]

## B. The Amended Complaint fails to sufficiently plead an exception to Wis. Stat. § 180.0828(1).

Wisconsin's "limited liability of directors" statute provides an additional layer of protection for directors.  Wis. Stat. § 180.0828(1); *see also* Kenneth B. Davis, Jr., *The Business Judgment Rule in Wisconsin*, 2015 WIS. L. REV. 475, 485 ("[T]he statute and [the business judgment rule] are separate and supplement one another.") (Babler Ex. D).  Under Wis. Stat. § 180.0828, directors are "not liable" for breach of "any duty" unless a director's conduct constitutes:

> (a) A willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest.
>
> (b) A violation of criminal law, unless the director had reasonable cause to believe that his or her conduct was lawful or no reasonable cause to believe that his or her conduct was unlawful.
>
> (c) A transaction from which the director derived an improper personal profit.
>
> (d) Willful misconduct.

Wis. Stat. § 180.0828(1).  Plaintiffs allege in conclusory fashion that defendants' actions fall under exceptions (a), (c), and (d), so Wis. Stat. § 180.0828(1) does not apply.  Compl. ¶ 330. Such conclusory allegations cannot satisfy plaintiffs' burden.  *Data Key*, 2014 WI 86, ¶43.

### 1. *Plaintiffs do not sufficiently plead material conflict of interest*

*(§ 180.0828(1)(a)).*  The precise "conflicts" plaintiffs allege are never made clear, which is

---

[14]    Plaintiffs also state repeatedly that the directors had a "duty" to "maximize JCI shareholders' equity interest in JCplc."  *E.g.*, Compl. ¶ 110.  This is not so.  Wisconsin statutes allow directors to consider many factors in addition to effect on shareholders when determining what business actions are in the best interest of the corporation. Wis. Stat. § 180.0827; *see also Dixon*, 785 F. Supp. 2d at 751-53 (finding that "duty to maximize value for shareholders is not the law in Wisconsin," but rather that courts should apply the business judgment rule).

sufficient reason not to credit them. But plaintiffs appear to be alleging two principal theories: (1) the board was conflicted because the transaction would favor some shareholders over others; and (2) the board was conflicted because the Individual Defendants put their own interests in avoiding IRC § 4985 (and the additional taxes it might impose on them) above the interests of JCI shareholders.

        a. <u>There is no "minority."</u>  Plaintiffs' first theory fails because the exception at Wis. Stat. § 180.0828(1)(a), by its clear language, applies to conflicts of directors, not conflicts between different shareholder groups (even if such different groups existed, which here they do not). *See Bucyrus*, 2014 WL 1406279, at *6 ("A director is considered interested if he or she will receive a personal, material benefit from the transaction that is not equally shared by the stockholders or if a corporate decision will have a material impact on the director but not the corporation or its stockholders."); *see also In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611, 618 (Del. Ch. 1999) ("An allegation that properly motivated directors, for no improper personal reason, advantaged one class of stockholders over the other in apportioning transactional consideration does not state a claim for breach of the duty of loyalty.").

        Regardless, plaintiffs' labeling of the "Minority Subclass" as an attempt to suggest a conflict between this "minority" and the corporation itself or the "majority" shareholders is deceptive:  JCI did not have a majority *or* minority shareholder.  JCI had one class of common stock that was widely and publicly held and all holders of that stock received the same compensation in the merger.  Proxy at 2.  The transaction was taxable to all of them; any differing tax consequences were solely the results of shareholders' respective status under the U.S. tax laws, tax planning, income levels, and tax basis.  There can be no conflict between a nonexistent majority and minority of shareholders.

The law does not require directors to make decisions that satisfy every shareholder; rather their duty is to their shareholders *as a whole*.  *See* Compl. ¶ 253(c) ("Under Wisconsin law, the fiduciary duties owed by officers and directors to their corporations extend to *all* shareholders of such corporations.") (emphasis added).  As courts considering this precise issue in the merger context have repeatedly found, a board must proceed with the action that it believes serves *the company and shareholders overall*, even if a decision may not be favored by 100 percent of all shareholders.  As noted in a case cited by the Wisconsin Supreme Court with approval in *Data Key*, "a common law rule calling 'conflict transaction' whenever a [] corporation with a diverse, international tax base engages in M&A activity *subject to different tax treatment at the stockholder level* in many nations would diminish the wealth-creating objective of our law and inhibit [] corporations from competing in a global economy."  *In re Synthes, Inc., S'holders Litig.*, 50 A.3d 1022, 1046 n.109 (Del. Ch. 2012) (emphasis added); *see also In re Trados Inc. S'holders Litig.*, 73 A.3d 17, 38 (Del. Ch. 2013) ("The duty to act for the ultimate benefit of stockholders does not require that directors fulfill the wishes of a particular subset of the stockholder base.").

        b.   <u>The Individual Defendants had no conflicting financial interests</u>.

Plaintiffs' second theory—that Individual Defendants were conflicted by their alleged desire to avoid IRC § 4985 and potential additional taxes it might impose on them if JCI shareholders ultimately owned more than 60 percent of the combined company—also fabricates a conflict where none exists.  As plaintiffs point out, the merger agreement "permitted JCI to enter into agreements with the Individual Defendants and other executive officers for the reimbursement of any taxes that may be imposed under IRC § 4985" in connection with the merger.  Compl. ¶ 83. This arrangement rendered the Individual Defendants indifferent to the potential impact of IRC

§ 4985:  If JCI shareholders ultimately owned less than 60 percent (as was the case here), IRC § 4985 would not apply, and no extra taxes would be imposed on the Individual Defendants.  If JCI shareholders ultimately owned more than 60 percent, JCI could reimburse the Individual Defendants for any extra taxes imposed by IRC § 4985.  Thus, the merger agreement's terms led to the same outcome for the Individual Defendants in either case (and, far from providing an additional benefit, simply protected them from being taxed *more* than other shareholders).[15]  This agreement obviated any potential conflict of interest caused by IRC § 4985.

### 2. *Plaintiffs do not sufficiently plead improper personal profit*

*(§ 180.0828(1)(b))*.  Plaintiffs make no specific allegations of "improper personal profit" beyond reciting the phrase.  Compl. ¶ 299.  Reading the Amended Complaint as favorably as possible, plaintiffs complain only of executive compensation, another board decision to which the business judgment rule applies and which in itself is insufficient to constitute an improper profit. *Reget*, 2011 WI App 73, ¶20; *cf. Data Key*, 2014 WI 86, ¶51 (finding no improper personal profit where there was no allegation that a challenged compensation arrangement would not have occurred except as part of the consummated deal).  Plaintiffs would also like this Court to believe that the Individual Defendants received different consideration for their shares of JCI common stock than did other shareholders in the merger.  *See* Compl. ¶¶ 88-89.  Not so.  Any *actual* shares of JCI common stock held by Individual Defendants—as opposed to deferred equity compensation, cash-settled units, restricted stock awards, or options—were converted in

---

[15]     Plaintiffs also allege that this provision of the merger agreement allowed the Individual Defendants to avoid taxes "but no tax avoidance has been arranged for JCI shareholders."  Compl. ¶ 10.  But Section 4985 by its terms applies only to those shareholders subject to the reporting requirements of § 16(a) of the Exchange Act.  *See also* Compl. ¶ 10 n.3.  Thus if it were to have applied, it would have imposed a tax on the Individual Defendants (with the exception of Mr. Janowski who was never subject to this provision) that was required of no other shareholder.  In that way, the arrangement with JCI was similar to an indemnification of the directors which, as *Data Key* specifically held, is *not* a material conflict of interest.  *See Data Key*, 2014 WI 86, ¶53.  Moreover, this arrangement had no impact on the Individual Defendants' personal holdings of JCI stock:  The merger was taxable to the Individual Defendants with respect to their JCI common stock in the exact same manner as it was to all other holders of JCI common stock.

the same way as those of all other holders. *See* Proxy at 151-52 (describing "Treatment of Johnson Controls Equity-Based Awards," not common stock). Regardless, any "potential conflict of interest also was disclosed, which means that the [] directors did not engage in 'a willful failure to deal fairly with the corporation or its shareholders' in connection with the conflict." *Dixon* v. *ATI Ladish LLC*, 667 F.3d 891, 896 (7th Cir. 2012) (citing Wis. Stat. § 180.0828(1)).

### 3. *Plaintiffs do not sufficiently plead willful misconduct (§ 180.0828(1)(c)).*

Finally, plaintiffs have failed properly to allege facts showing any "willful misconduct" (or, for that matter, "willful failure to deal fairly" with the company or its shareholders—a companion requirement to plead the first exception to the statute). Nor could they, for as the Proxy makes clear, the defendants believed the benefits of the merger—including the hundreds of millions of dollars in anticipated synergies—would redound to the benefit of all shareholders, including plaintiffs. Proxy at 112-15. And indeed, plaintiffs have conceded that the merger was undertaken in the best interests of the company. *See* Compl. ¶¶ 68-78 ("The Benefits to JCI and JCplc").

Ultimately and "most importantly," in spite of their conclusory and wholly unsupported allegations of conflicts, improper benefits, and willful misconduct, "the pleadings do not show that the directors' actions were *not* the product of business judgment." *Data Key*, 2014 WI 86, ¶49 (emphasis added). No exception to the statute applies.

### C. The Amended Complaint fails to plead a breach of fiduciary duty as to the officer defendants.

In a misguided attempt to skirt the broad protection under Wisconsin statutory law for directors, plaintiffs indiscriminately throw JCI officers in as defendants and argue that they do not get the protection of the business judgment rule. Compl. ¶¶ 32-35, 329(a). Indeed, in their Amended Complaint, they add as a defendant JCI's tax director (Mr. Janowski) whose name is

not mentioned even once in the Proxy. Compl. ¶ 35. Plaintiffs never describe how any of these "officers," who did not approve the merger, breached any duty. Indeed, there is not a single allegation that mentions one of the officers by name. For this reason, plaintiffs have failed to state a claim against them that can survive the notice pleading requirements in this Circuit. *See, e.g.*, *Bank of America, N.A.* v. *Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed.").

Nonetheless, plaintiffs' assertion that the protection afforded by the business judgment rule does not extend to officers is unavailing. Though Wis. Stat. § 180.0828(1) codifies the limited liability of directors, the common law business judgment rule itself has long been understood to apply to officers *and* directors, both of whom are equally charged with acting in the company's best interest. *See* Kenneth B. Davis, Jr., *The Business Judgment Rule in Wisconsin*, 2015 Wis. L. Rev. 475, 485 (the statute was "never intended to supplant Wisconsin case law by defining what constitutes a breach of fiduciary duty"); *Casper* v. *American Int'l S. Ins. Co.*, 2011 WI 81, ¶¶101-02, 336 Wis. 2d 267, 800 N.W.2d 880 (observing that the business judgment rule is also partially codified in Wis. Stat. § 180.0826 and that "the business judgment rule, as expressed in *Einhorn* and in Wis. Stat. § 180.0826, defines a corporate officer's duties to a company's shareholders"). Without such a safeguard for officers, courts would be forced to interject themselves into the affairs of corporate decision-makers and, with the benefit of hindsight, to challenge actions taken in good faith and on the company's behalf—precisely what the business judgment rule was devised to prevent.

Indeed, though the Wisconsin Supreme Court in *Data Key* focused its analysis on the Wisconsin statute, it noted more broadly that the business judgment rule "precludes courts from

second-guessing business decisions." *Data Key*, 2014 WI 86, ¶34. The court cited with

approval cases decided well before § 180.0828 was enacted. *Id.* (citing *Steven* v. *Hale–Haas*

*Corp.*, 249 Wis. at 221 (1946)) ("[T]his court will not substitute its judgment for that of the

board of directors and assume to appraise the wisdom of any corporate action. The business of a

corporation is committed *to its officers* and directors, and if *their actions* are consistent with the

*exercise of honest discretion*, *the management of the corporation cannot be assumed by the*

*court*." (emphasis added)). As Wisconsin courts have explained, "[a] statute does not change the

common law unless the legislative purpose to do so is clearly expressed in the language of the

statute. To accomplish a change in the common law, the language of the statute must be clear,

unambiguous, and peremptory." *See, e.g.*, *Fuchsgruber* v. *Custom Accessories, Inc.*, 2001 WI

81, ¶25, 244 Wis. 2d 758, 628 N.W.2d 833 (citations omitted). The Wisconsin Supreme Court in

*Data Key*, *Casper*, and *Einhorn* recognized the continued survival of the common law rule, so

this Court too must do so.

Plaintiffs have made no showing of a breach of duty by any of the officers, whose duty is

to "act in good faith and to deal fairly in the conduct of all corporate business." *Reget*, 2001 WI

App 73, ¶12. Again, plaintiffs plead that the officers did exactly that: acted in a manner that they

thought was for the benefit of JCI. Compl. ¶ 324. Absent more, plaintiffs are inviting this Court

to engage in the very kind of second-guessing that the business judgment rule is meant to

prevent. It is hard to imagine an area more appropriate for business judgment protection than

complicated tax planning decisions with which a corporation will have to abide for years.[16]

---

[16]     JCI's Restated Articles of Incorporation further provide officers are fully indemnified by the company for
any actions, unless taken in bad faith. Ex. 3.1 to Form 8-K, filed September 6, 2016 (Ex. 4). Plaintiffs have made
no allegations of bad faith by any of the officer defendants.

## IV.    PLAINTIFFS' OTHER STATE-LAW CLAIMS FAIL TO STATE A CLAIM.

### A.    The Amended Complaint fails to state a claim for other state-law tort claims.

Plaintiffs' other tort claims (unjust enrichment, aiding and abetting unjust enrichment, conversion, conspiracy) are just aliases for their breach of fiduciary duty claim, and they fail for the same reasons.  *Monroe Cty. Emps.' Retire. Sys.* v. *Carlson*, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010) ("In addition, Count III must be dismissed because the unjust enrichment claim asserted therein depends on the success of the breach of fiduciary duty claim alleged in Count II."); *Frank* v. *Elgamal*, 2014 WL 957550, at *31 (Del. Ch. Mar. 10, 2014) ("The Court frequently treats duplicative fiduciary duty and unjust enrichment claims in the same manner when resolving a motion to dismiss."); *see also Bucyrus*, 2014 WL 1406279, at *5 (no liability for aiding and abetting acts that do not themselves constitute a breach of fiduciary duty).

Even if the state-law tort claims did not fall along with the breach of fiduciary duty claim, they would independently fail:  The unjust enrichment and conversion claims could only succeed if the merger agreement were declared invalid as a matter of law.  *See In re TIBCO Software Inc. Stockholders Litig.*, 2015 WL 6155894, at *30 (Del. Ch. Oct. 20, 2015); *see also Arnold* v. *Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (quotations omitted) (to establish conversion in connection with a merger, "plaintiff must show that the merger did not effectively exchange" the shares of one company for that of the other).  But far from challenging the merger, plaintiffs "do not take issue with" its "purported business or financial merits."  Compl. ¶ 8.  Therefore, plaintiffs have not plausibly pleaded an unjust enrichment or conversion claim.

Further, unjust enrichment is an improper vehicle to challenge merger terms after the fact.  *Latesco, L.P.* v. *Wayport, Inc.*, 2009 WL 2246793, at *9 n.33 (Del. Ch. July 24, 2009) ("Unjust enrichment is a restitutionary claim, which arises in circumstances in which it would be inequitable to allow a party to retain a benefit which has been conferred on him by another. . . .  It is not,

however, a means by which a party who later regrets a legally contracted sale as being for insufficient price can recover value he claims he failed to capture in the sale.").

Plaintiffs' conspiracy claim fails because no "wrongful acts" are pleaded against the defendants, let alone any allegations of the "formation and operation" of a conspiracy. *See Onderdonk* v. *Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507 (1977). Moreover, the claim is barred under the intracorporate conspiracy doctrine, recognized in Wisconsin. *Copperweld Corp.* v. *Independence Tube Corp.*, 467 U.S. 752 (1984); *Ford Motor Co.* v. *Lyons*, 137 Wis. 2d 397, 405 N.W.2d 354 (Ct. App. 1987); *Wausau Med. Ctr., S.C.* v. *Asplund*, 182 Wis. 2d 274, 514 N.W.2d 34 (Ct. App. 1994). Under that doctrine, plaintiffs cannot plead conspiracy by alleging that intracorporate actors conspired with each other. Accordingly, plaintiffs' claim that JCI's directors conspired with JCI fails.

### B. The Amended Complaint fails to state a claim for violation of Wis. Stat. § 180.0601.

In another attempt to plead breach of fiduciary duty by another name, plaintiffs ask the Court to make new law by creating a private cause of action under Wis. Stat. § 180.0601, which merely sets forth the law governing authorization of classes and series of stock, providing unremarkably that "[a]ll shares of a class shall have preferences, limitations and relative rights identical with those of other shares of the same class unless the class is divided into series." Nothing in § 180.0601, or Chapter 180, suggests that the Legislature intended to create a private cause of action. *See Grube* v. *Daun*, 563 N.W.2d 523, 526 (Wis. 1997) ("A determination of whether a statute creates a private right of action is dependent on whether there is a clear indication of the legislature's intent to create such a right.").

In any event, plaintiffs read far more into § 180.0601 than its language can support, asserting that it requires that "all holders of shares . . . be treated equally and without preference

or discrimination." Compl. ¶ 370. The statute cannot support plaintiffs' suggestion that it imposes additional duties on directors. Even if this is what the statute said (it is not) and even if the statute provided a private right of action (it does not), the claim must fail because the transaction does not discriminate among shareholders in JCI's single class of shares. The transaction is taxable to all shareholders. Shareholders experience different tax consequences based on their own tax status (*e.g.*, tax-exempt organization), tax planning (those holding shares in a tax-advantaged account may not owe taxes immediately or at all), income brackets (lower-income shareholders will owe less tax), and bases (some may even realize tax *benefits* if they have losses). Wisconsin Stat. § 180.0601 cannot support plaintiffs' absurd notion that directors of Wisconsin corporations have a duty to ensure that the effects of corporate action are the same for all shareholders.

### C. The Amended Complaint fails to state a contract or contract-related claim.

Plaintiffs' contract claims likewise fail. Plaintiffs suggest that JCI's bylaws formed the contract giving rise to these contract claims. Compl. ¶¶ 381, 389, 395-96. But the Amended Complaint is missing the most basic element of a breach of contract claim: an allegation of which specific provision of the contract was breached. *See St. Francis Sav. & Loan Assoc.* v. *Hearthside Homes, Inc.*, 221 N.W.2d 840, 843 (Wis. 1974) (breach of contract claim under Wisconsin law must, at a minimum, "specifically allege the provision of the contract at issue and its breach by the defendant."); *see also Gandhi* v. *Sitara Capital Mgmt., LLC*, 689 F. Supp. 2d 1004, 1016 (N.D. Ill. 2010) (dismissing breach of contract claim premised on partnership agreement where plaintiffs failed to identify provision of agreement breached).

The good faith and fair dealing claim is yet another breach of fiduciary duty claim by another name. *See* Compl. ¶ 397 ("Pursuant to the covenant of good faith and fair dealing implied in the JCI articles of incorporation, JCI and its officers and directors, on the one hand,

and JCI shareholders, on the other, are required to act in good faith towards the other and deal fairly with each other . . . .").  The duty of good faith and fair dealing, however, is a contract concept "only appropriately used—where there is a contract in the first place—to supply missing terms."  *Hegel* v. *Brunswick Corp.*, 2010 WL 4068490, at *2 (E.D. Wis. Oct. 15, 2010). Plaintiffs have identified no "gap" to be filled by the implied duty of good faith and fair dealing.

The tortious interference claim is also baseless.  Plaintiffs allege that the "JCI Defendants," including JCI itself and its directors and some officers (acting as such), tortiously interfered with their contract with plaintiffs.  Compl. ¶¶ 384-87.  That is to say, plaintiffs allege that defendants interfered with a contract to which they were a party.  This is impossible under Wisconsin law.  *E.g.*, *Wausau Med. Ctr.*, 182 Wis. 2d at 297 ("Asplund's interference with his own contract with WMC is not an action encompassed by a tortious interference with contract cause of action . . . .").

## CONCLUSION

Plaintiffs have had ample opportunity to come up with a plausible claim for relief, but have failed.  The Amended Complaint should be dismissed in its entirety and with prejudice.

Dated this 3rd day of April, 2017.

FOLEY & LARDNER LLP


By   <u>s/ Bryan B. House</u>
            Thomas L. Shriner, Jr., Bar No. 1015208
            Bryan B. House, Bar No. 1022054
            Philip C. Babler, Bar No. 1070437
            Kate E. Gehl, Bar No. 1081421

            *Attorneys for Defendants*

777 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 297-5601 (TLS)
(414) 297-5554 (BBH)
(414) 297-5561 (PCB)
(414) 297-5279 (KEG)
(414) 297-4900 facsimile
tshriner@foley.com
bhouse@foley.com
pcbabler@foley.com
kgehl@foley.com


            WACHTELL, LIPTON, ROSEN & KATZ
            Ben M. Germana
            Jonathan M. Moses
            Claire E. Addis
            Cecilia A. Glass

            *Attorneys for Defendants*

51 West 52nd Street
New York, NY 10019
(212) 403-1000
(212) 403-2000 facsimile
BMGermana@wlrk.com
JMMoses@wlrk.com
CEAddis@wlrk.com
CAGlass@wlrk.com